172 So. 250

ROBERSON v. STATE.

2 Div. 82.

Supreme Court of Alabama.

Jan. 21, 1937.

A. W. Stewart, of Marion, for appellant.

A. A. Carmichael, Atty. Gen., for the State.

BOULDIN, Justice.

Eddie Roberson killed Willie James Jefferson by cutting him with a knife.

There were no eyewitnesses to the fatal rencounter, except defendant, who took the stand in his own behalf.

Will Holliday, first witness for the State, testified to seeing defendant at the house of Mose Roberson soon after the killing; that he was wounded and bloody. On cross-examination of this witness the record recites the following:

"When I saw defendant at Mose Roberson's house he had blood on his head. He had a wound on his head. I didn't examine it, but could see the blood coming from it. There were two places, one right here and one right here (in the head). The blood came down on his shoulders from that wound; he was bloody down to his knees.

"Counsel for the defendant then asked the witness this question: Q. Did much blood come down on his shoulders from this wound, or little? To which the State interposed an objection. The Court sustained the objection and to the action of the Court the defendant then and there duly reserved an exception.

"His whole face was bloody and blood was coming down on his head like anything that was bleeding. His shirt and pants were bloody down below his knees."

Counsel for appellant argues there was error in sustaining objection by the State to the question: "Did much blood come

444

down on his shoulders from this wound, or little?"

The argument is that evidence of a small amount of blood from this source would tend to support the testimony of defendant to the effect that deceased knocked him down, was on top of him beating him, when defendant drew his knife and cut deceased, thus accounting for much blood on the face and clothing of defendant.

■■ This testimony of defendant was not in when the ruling complained of was made, and nothing appears to have been made known to the court touching the matters now insisted upon. The testimony of witness Holliday, on the extent of defendant's wounds and bleeding therefrom, was quite as full as the issues then developed called for. With regard to this, as well as several other rulings, we remark that, where objection is sustained, but the party, nevertheless, proceeds to get in the evidence sought, in substance and effect, which is not excluded and remains for the jury's consideration, the initial ruling, if erroneous, is harmless.

Mark Williams, a witness for the State, testified that he saw deceased when he left home that day, going in the direction of Newbern; that the body of deceased was found 272 yards from his house.

The solicitor asked the witness: "Prior to that, on that day, had the defendant and the deceased had any angry words with each other?" '

Objection by defendant being overruled and exception reserved, witness answered: "Yes, sir."

The witness then testified that before deceased left the house and went toward Newbern the defendant had gone in the same direction.

The solicitor then asked: "Did you hear him say anything to the deceased before he left?"

Over objection of defendant, the witness was permitted to answer in effect that defendant said in insulting language that he was going to Mr. Spencer, the landlord of the two negroes, and have deceased put off the place. To this deceased replied: "That's all right. I will be there when you get there." The witness further testified deceased left about half an hour after defendant. On cross-examination, after repeating defendant's threat to have deceased run off the place, witness was asked:

"Isn't it a fact that James Jefferson had let his cow or hog get in the defendant's crop that day and they had had a fuss about that and defendant told deceased he was going to see Mr. Spencer about his stock?"

■ The court sustained the State's objection to this question, and exception was reserved. It was competent for the State to show the fact of a former difficulty on that day, but not the particulars. The answer "Yes" to the inquiry whether the parties had angry words did not go into particulars.

■■ It is argued, however, that, having gone into the details of the quarrel shortly before both parties left in the same direction the body of deceased was found, the defendant should have been permitted to go into the full details. This is a correct rule. But the question embodied details of a separate transaction, the alleged trespass of livestock on defendant's crop leading to the quarrel to which the witness had testified. The court was not required to go into an outside inquiry as to the charge of trespassing livestock, etc.

■■ The next question on cross-examination: "And when he did that James Jefferson got two bricks and came over to his yard and told him to go to Mr. Spencer?" was objectionable in referring back and assuming the matters just ruled out. But here again the later cross-examination fully covered all the details of the interview in question, including a denial of the deceased having threatened defendant and menaced him with brickbats.

There was sharp conflict between the evidence for the State and that of defendant as to threats by deceased and the time intervening after defendant left in the direction of Mr. Spencer's before deceased went in the same direction.

Lovelace Bryant, first witness for defendant, after testifying that the parties lived within 30 yards of each other, that deceased followed hard after defendant, with brickbats in his hands, reverted to what had passed before they left, and testified that defendant told deceased to get out of his yard, and deceased replied with a vile epithet, "Make me get out."

■ Defendant then asked: "How many times did he tell him to get out." The court sustained the State's objection and exception was reserved.

According to this witness, deceased then had the bricks in his hands. The question

should have been permitted as tending to show who was the aggressor in bringing on the fatal altercation. However, on rebuttal and recross-examination the witness repeated the same words between the parties and added: "That happened more than once. Ed didn't have a thing in his hand. * * * He [deceased] didn't back off from Ed and leave when he had those bricks in his hand. He backed off from him like he was going to hit him. No, he didn't throw them. Then he left." Thus, in substance and effect, the testimony called for was before the jury.

Sustaining the objection on original examination was without injury.

We find no error to reverse in any rulings upon evidence to which exceptions were reserved.

Further discussion is deemed unnecessary.

 The law of the case was fully covered by the court's oral charge and given charges for defendant. A repetition by charges to like effect in varying phraseology is not required by law. If not otherwise objectionable, the charges were refused without error on this ground.

 The record does not affirmatively show that all the evidence is set out. The sufficiency of the evidence to sustain a verdict beyond a reasonable doubt is therefore not reviewable.

By this we would not be understood as intimating the evidence set out would not warrant a verdict of murder in the second degree. The conflicts in the evidence, the physical facts at and about the place of the killing, and all the circumstances were for the solution of the jury. It is not claimed by defendant that deceased was, at any time, assaulting him with a knife, although deceased's opened knife was found where the altercation is alleged to have begun. The evidence of a struggle wherein wounds were inflicted upon the hands, the neck, and in the back of deceased, resulting in his death at a point some 70 to 80 yards from the place of first bloodletting, was among the matters to be weighed in connection with defendant's version of the affair.

Affirmed.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.