BOOKOUT, Judge.
Second degree murder; sentence: ninety-nine years imprisonment.
. The evidence showed that around 6:45 P.M. on March 29, 1976, the appellant and his brother, Michael Holloman, went to the apartment where Welbert Johnson was staying. They cursed and threatened Johnson and then began fighting him. The motive is unclear, and it appears to be a senseless scuffle that culminated in a knifing. The appellant repeatedly stabbed Johnson in the back, while Michael Holloman held him on the ground. Both brothers ran away when a resident of the apartment fired two warning shots at the duo. There were four eyewitnesses to the killing.
Michael Holloman testified for the defense that he was “tussling” with Johnson for about ten minutes. Johnson had a knife, but did not cut him. Michael’s brother Roosevelt (appellant) came up and joined in the fight and stabbed Johnson. The witness was apparently attempting to show self-defense on the part of his brother, but he definitely testified that the appellant did the stabbing. None of the other witnesses saw the victim with a knife, and the police did not find one at the scene. One police officer, who interrogated Michael Hollo-man, testified that the witness did not tell him that the victim was armed with a knife. The appellant did not testify.
I
The identity of the victim was established by the four eyewitnesses. The victim’s name was set out in the indictment as “Wilbur” Johnson, whereas on trial it was shown (by the State) that his name was *133 actually spelled “Welbert. The victims father testified that he was known as, and called by the name “Wilbur.” There was no objection, plea, motion or demurrer filed contending that a fatal variance existed because of the misspelling of the victim’s first name in the indictment. We conclude that no error resulted. In Russell v. State, 54 Ala.App. 452, 309 So.2d 489 (1974) cert. denied 293 Ala. 773, 309 So.2d 495, we held that no material variance is shown where an indictment identifies a victim by the name by which he is known in the community where he lived, although it is not his true name. See also: Roberts v. State, 25 Ala.App. 477, 149 So. 356 (1933). One of our latest expressions in this regard is found in an opinion by Judge Tyson, Westfaul v. State, 56 Ala.App. 519, 323 So.2d 404 (1975) cert. denied 295 Ala. 427, 323 So.2d 406, wherein we reached the same conclusion as in the instant case.
II
Several photographs of the victim’s body were introduced over objection that they were gruesome, cumulative and of no probative value. We find no abuse of discretion on the part of the trial judge in admitting the photographs into evidence. They were properly identified and authenticated and tended to shed light on the nature of the wounds and the ferocity of the attack. Lewis v. State, Ala.Cr.App., 339 So.2d 1035 (1976) cert. denied, Ala., 339 So.2d 1038; McHugh v. State, 53 Ala.App. 473, 301 So.2d 238 (1974).
III
Counsel for appellant attempted to impeach the credibility of State’s witness Alma Reed when the following occurred:
“Q. Do you know her general reputation in the community in which she lives?
“A. Well, it’s not so good.”
The prosecutor then objected, and the trial judge sustained the objection, to which appellant excepted.
The credibility of a witness may be attacked by questions relating to the general reputation of that witness in the community. Pugh v. State, 42 Ala.App. 499,169 So.2d 27 (1964); Gamble, McElroy’s Alabama Evidence (3rd ed. 1977), § 140.01. However, we find that no prejudicial error resulted since the witness gave the answer which appellant sought to elicit prior to the objection. Rule 45, Alabama Rules of Appellate Procedure.
Counsel for appellant also attempted to elicit testimony concerning the bad general reputation of the victim. He excepted to the trial judge’s refusal to allow such testimony. The general reputation of the victim was immaterial and irrelevant. In Anderson v. State, 30 Ala.App. 124, 2 So.2d 461 (1941) the Court of Appeals held:
“There was no impropriety in disallowing proof of the general bad character of the deceased. In a murder prosecution, such inquiry should be limited to his character or reputation for violence, turbulence, and bloodthirstiness; and this, of course, only where the issue of self-defense is presented. Sanford v. State, 2 Ala.App. 81, 88, 57 So. 134; McKenney v. State, 17 Ala.App. 117, 82 So. 565; 30 C.J., p. 229, Sec. 465.”
Counsel for appellant next asked if a witness knew the victim’s general reputation in the community for peace and quiet. The trial judge sustained the State’s objection, and the appellant excepted. It is now generally recognized that in asserting self-defense, the accused may prove the victim’s bad general reputation for peace and quiet, McElroy’s Alabama Evidence, § 33.01(5), supra; however, counsel must limit the scope of the question to the time of, or to a time prior to the alleged offense. Standard v. State, 51 Ala.App. 176, 283 So.2d 627 (1973). Counsel for appellant did not so limit his question, and thus the trial court will not be held in error for sustaining the State’s objection.
IV
The appellant submitted one written requested charge on the subject of reasonable doubt, which was refused by the court. The subject was adequately and substan *134 tially covered in the trial court’s oral charge to the jury and therefore the requested charge was properly refused. Title 7, § 273, Code of Alabama 1940.
There was no motion to exclude the State’s evidence, no request for the affirmative charge and no motion for a new trial. The sufficiency of the evidence is therefore not subject to review. Hunter v. State, Ala.Cr.App., 331 So.2d 406 (1976).
AFFIRMED.
All the Judges concur.