The defendant was indicted and convicted for the possession of a pistol after having been convicted of a crime of violence (burglary and grand larceny). Alabama Code 1975, Section 13-6-152 (a). Sentence was three years' imprisonment. Four issues are presented on appeal.
 I
Prior to trial, defense counsel made both oral and written motions to limit and exclude any evidence of the burglary of the Imperial Reading building by the defendant's brother, Odell Dennis Smith, which occurred at approximately the same time and almost directly across the highway from the Racetrac service station where the defendant was arrested.
Investigating a burglary in progress, Oxford police officers went to the Imperial Reading building on Highway 21 in Oxford around 3:00 on the morning of November 30, 1979. They captured the defendant's brother who had broken into the building and took him to the police station. At the station the police tried to find out where Odell Smith's vehicle was or "how he got down there." *Page 531 
While at Imperial Reading the officers noticed a car parked in the Racetrac service station across the highway from the building. Although the service station was open for business an officer stopped to investigate this automobile.
Oxford Police Officer Howard Pettus arrived at the service station and saw Officer Tim Caulder talking with the defendant behind the "suspect vehicle." Officer Pettus asked the defendant for his full name and some "I.D.". After receiving a social security card, Officer Pettus "asked him if he had any kind of weapons or anything on him." The defendant voluntarily removed three .22 caliber short bullets from his pocket. Officer Pettus testified that he then asked the defendant if he had a gun and the defendant replied, "Yes Sir". Pettus stated: "I said, `Where is it? He said, `It's in the dash of the car.'" * * * "I asked him if I could see the gun." * * * "He said, `You can get it out of the dash.'" Pettus then removed a .22 caliber pistol from the dashboard of the vehicle. After learning that the defendant did not have a permit to possess the pistol, Officer Pettus placed him under arrest.
The automobile belonged to the defendant's brother. Two young children were in the car. These were the defendant's brother's children. Besides the defendant, there was no other adult around or in the car.
The trial judge granted the defendant's motions to exclude any evidence of the burglary to a limited extent. The court ruled:
 "THE COURT: Now then, as to further aspects of the Defendant's oral motion presented to the Court to totally limit or exclude any evidence of alleged burglary offense involving Odell Dennis Smith and the burglary at the Imperial Reading building, I'm going to grant that motion to some extent. I think that it would be permissible for the State to draw out the facts as to why they might have been in a particular location where they were at a time in which they were lead to the accused who is on trial here today. And I think that they can go to the extent of the fact that they made an arrest at that point and they determined the name of that individual, who that individual was by name is, I think, a part of the reason that Mr. Collis Cordell Smith was questioned and involved the determination — came about from the determination as to his relationship with that particular party that was arrested. Now, at that point, I think that's as far as the State would be able to go. I don't see that the subsequent conviction of Odell Dennis Smith should necessarily, for the record, tie back to Imperial Reading. I'm going to let that go to that extent. Just to the fact that they were out on that stretch of highway at the time at which the officer's attention was first focused or directed to the Defendant on trial here today."
* * * * * *
 "THE COURT: All right. The Court's going to do this, I'm going to limit the prosecution to going into the fact that they were called to a burglary, that they made an arrest. It's going to be the Court's ruling that they are not to mention the name of the person whom they arrested. Now, if it's their testimony that upon determining the name of the party arrested for the burglary, that out of that they somehow connect another person to him, and that's what led them to this Defendant the fact that a brother, a relative of the person that was arrested was in what they claim to be the immediate vicinity; I think I'm going to allow the State that."
* * * * * *
 "MS. OWENS (Defense Counsel): Well, Your Honor, we're going to object to that and I understand the Court's ruling to be that the State may not elicit from police witnesses the identity of the Defendant — the identity of the burglar.
"THE COURT: That's correct."
The trial judge wisely and properly excluded any evidence identifying the defendant's brother as the burglar arrested at Imperial Reading. While antecedent circumstances tending to shed light on the criminal transaction or elucidate the facts *Page 532 
connected therewith are admissible in evidence against the accused, Pope v. State, 365 So.2d 369 (Ala.Cr.App. 1978), "(a)ntecedent acts of third persons which apparently have no connection with the commission of the crime by the accused are not admissible, unless their connection and relevancy are made apparent by other facts introduced or offered to be introduced in evidence." 22A C.J.S. Criminal Law, Section 606 (1961). Even though the burglary and the crime charged against the defendant were closely related in time and place, the burglary committed by the defendant's brother had no connection to the crime charged against the defendant. Dean v. State, 98 Ala. 71,13 So. 318 (1892) (On a trial for carrying a concealed weapon, evidence is inadmissible that the defendant, a short time before the discovery of the pistol on his person, said he was "going to raise hell" that night.) In Hainey v. State, 147 Ala. 146,41 So. 968 (1906), it was held error to admit evidence that the defendant was drunk at the time it was alleged he carried a concealed weapon. It was also held inadmissible to show that the accused was a brother of a person whom the officers were seeking to arrest for drunkenness at the time the accused is alleged to have carried the concealed weapon.
While defendant's appellate counsel argues that "the jury would have had to been asleep not to figure out that Dennis (the defendant's brother) was the one arrested for the burglary" we do not find the evidence implying that conclusion either that strong or that clear. For this reason we do not think that the trial judge erred in failing to exclude all the testimony of the burglary and in limiting the evidence of the burglary to exclude the identification of the defendant's brother.
 II
Just as fully as we uphold the trial court's decision on this issue, we condemn the action of the prosecutor in attempting to breach that order. Either knowing or unwitting attempts by the prosecutor to do indirectly what the trial judge has explicitly prohibited him from doing have no place in a criminal trial.
While the State did not directly attempt to connect the defendant to the burglary, the prosecutor asked several questions which sought to establish the fact or plant the inference of the fact that it was the defendant's brother who burglarized Imperial Reading. This case is saved from a reversal only by the action of the trial judge in sustaining each and every objection of defense counsel to these questions. Defense counsel did not move to strike the objectionable questions nor request that the jury be instructed to disregard any implication present in those questions. There was no motion for a mistrial. While this issue now before us was presented to the trial judge in a motion for new trial, the denial of that motion was properly within the exercise of his discretion of which we find no clear abuse. In reviewing the denial of a motion for new trial, this Court will indulge every presumption in favor of the correctness of the ruling of the trial judge.Williams v. State, 348 So.2d 1113 (Ala.Cr.App.), cert. denied,348 So.2d 1116 (Ala. 1977). The grounds urged for a new trial must ordinarily be preserved at trial by timely and sufficient objections. Fuller v. State, 365 So.2d 1010 (Ala.Cr.App. 1978), cert. denied, 365 So.2d 1013 (Ala. 1979).
In conclusion, we only remark that had the trial judge failed to sustain or grant any objection or action requested by defense counsel to cure the objectionable questions of the prosecutor this case would require a reversal. Furthermore, had the questions of the prosecutor directly implicated the defendant in the burglary or clearly implicated the defendant's brother, we would have no hesitation in reversing the defendant's conviction.
 III
In a prosecution for possessing a pistol after a conviction of a crime of violence, the introduction of two prior convictions of crimes of violence is not improper on the theory that it is prejudicial to the *Page 533 
defendant since all that is necessary is the admission of one conviction of a crime of violence. O'Neal v. State, 50 Ala. App. 31,35, 276 So.2d 616, cert. denied, 290 Ala. 370,276 So.2d 621 (1973).
 IV
In brief it is argued that, because the State attempted to make its case against the defendant for possession of a pistol by suggesting to the jury that the defendant was the accomplice or "back-up man" for the burglary committed by his brother, the defendant presented evidence that he remained at the gas station only because he could not get his car started. To support this position, the defendant called Marie Hering, the Racetrac service station attendant. The trial judge sustained the State's objections to the following questions asked of Ms. Hering by defense counsel:
 1. "Did (the defendant) tell you he had a problem with his car?"
 2. "How long would you estimate that he had already been at the station by the time he asked you if you had jumper cables?"
 3. "When you told him you did not have any jumper cables did you see what he did then?"
 4. "After he asked you if you had any jumper cables, did you ever have any further conversation with him?"
The trial judge also excluded certain portions of Ms. Hering's answers.
 5. "He asked me and a customer if we had jumper cables."
 6. "I asked (the police), you know, what was going on. It was surprising to me that they were questioning him when he just wanted some jumper cables."
Obviously some of the questions to which objections were sustained sought information based on hearsay. Evidence from a party whose testimony is based on information furnished by the defendant is immaterial and inadmissible. McDonald v. State,241 Ala. 172, 1 So.2d 658 (1941); Kirklin v. State, 168 Ala. 83,53 So. 253 (1910); Cox v. State, 23 Ala. App. 86,122 So. 613, cert. denied, 219 Ala. 395, 122 So. 613 (1929).
Ms. Hering testified that the defendant purchased some gas; that he remained in the station thirty to forty-five minutes; that he never found any jumper cables that night. Ms. Hering also testified:
 "Q. What was the reason for your calling the Oxford Police?
 "A. Well, I noticed he had been out there for a little while and, of course, it was my first night and I was, you know, nervous, skeptical. So I went out and asked him, I told him that it being that early in the morning I didn't figure he would get any help. I asked him if he would like for me to call the Oxford Police and see if they would come help him and he said yes, so he came back in."
* * * * * *
 "A. I went directly in and called them and I told them there was a car that was having trouble and that he couldn't get it started and that if they could to send a car with some jumper cables."
Initially we note that, as we have stated before, the fact of the burglary had absolutely no relevance to the issue in this case except to show the reason the police came to question the defendant. However, fundamental fairness would indicate that, since the State was permitted to show why they were there, the defendant should be given the same opportunity.
The information defense counsel sought to elicit from Ms. Hering was placed before the jury despite the sustained objections of the prosecutor. The erroneous exclusion of testimony in the first instance is rendered harmless by the subsequent disclosure of facts of substantially the same effect. Jarrell v. State, 35 Ala. App. 256, 50 So.2d 767, reversed on other grounds, 255 Ala. 128, 50 So.2d 774, affirmed, 255 Ala. 209, 50 So.2d 776 (1951). Error in excluding evidence is harmless where evidence of the *Page 534 
same substance and effect is subsequently placed before the jury. Roberson v. State, 233 Ala. 442, 172 So. 250 (1937);Thompson v. State, 354 So.2d 1134 (Ala.Cr.App.), cert. denied,Ex parte Thompson, 354 So.2d 1138 (Ala. 1977).
Our review of the record convinces us that the judgment of the Circuit Court is due to be affirmed.
AFFIRMED.
All Judges concur.