PATTERSON, Judge.
Appellant, James Alfred Nichols, was convicted of second degree theft, in violation of § 13A-8-4, Code of Alabama 1975. The trial court sentenced appellant to a term of five years’ imprisonment, suspended, with three years’ supervised probation, fined him $1,000 plus court costs, and ordered him to pay restitution in the amount of $681.20. The only issue raised on appeal is the propriety of the trial court’s allowing testimony of collateral acts of theft, committed by two other individuals, into evidence at appellant’s trial under the theory that these collateral acts were part of a common plan or scheme.
The State’s evidence established that on January 22, 1985, Ms. Ada Belle Ikner was employed by T.G. & Y. as a cashier in its Fairhope store. Store manager Brian Luther Wilson testified that on January 22, 1985, he was notified by Ms. Tanzie Peterson, customer service manager, that Ikner was “ringing up her friends and not charging her friends for the full amount of merchandise.” Wilson proceeded to the housewares department and observed two individuals, Alphonse Richardson and Bernard Allen, “with two buggy loads of merchandise.” One cart contained a “Wagner Power Roller” valued at $99.99 and several other smaller items. The other cart contained a coffee maker valued at $44.99.
Wilson returned to the service desk and observed these two individuals “check out.” As the two individuals passed through Ik- *1301 ner’s line, Wilson rang up a “no sale” on one of the other computer registers, thereby making a record of the time and date of the transaction. (Each computer register terminal records the time and date of a transaction, which are retained inside the terminal.) Wilson could then compare the “no sale” time/date to the transaction recorded on the tape contained in Ikner’s terminal, which would make it possible to identify the particular transactions involving Richardson and Allen. Allen completed his transaction first, and according to Wilson, it looked “perfectly normal.” Allen departed with the coffee maker and three large picture frames valued at $24.99 each. Richardson came through the line “a couple of customers” later. Richardson had the Power Roller and several other items as he departed the store. Wilson allowed Ikner to finish processing the remaining customers before he pulled the tape of recorded transactions from her terminal. The record established that the recorded transaction prices did not correspond to the actual prices of the items Allen and Richardson had departed with. Ikner’s terminal tape showed that Richardson, who departed with a Power Roller valued at $99.99, had a total purchase of $15.94 and Allen, who departed with a $44.99 coffee maker and the three picture frames valued at $24.99 each, had a total purchase of $10.94.
Appellant contends that the actions of Richardson and Allen should not have been admitted into evidence in his case because they were separate criminal acts not connected with him. The State’s evidence establishes that appellant had proceeded through Ikner’s check-out station before Richardson and Allen. Appellant was evidently out of the store when Richardson and Allen got into Ikner’s check-out line. Wilson did not observe appellant with Richardson and Allen at any time while he was watching the latter two’s activities.
Appellant came to the attention of the store employees when Tanzie Peterson was required to void a sale involving appellant’s transaction. Isetta Kyles,[1] a cashier at T.G. & Y. on January 22, 1985, was helping Ikner when appellant was purchasing certain items. Kyles stated that appellant’s original purchase totaled $99.60 and appellant stated to Ikner that he did not have enough money to pay for the transaction. Kyles took the voided receipt to Peterson for approval, and appellant took some of the items out of his cart and gave them to Ikner, who placed the non-desired items behind her counter. Kyles then proceeded to another terminal and did not witness the remainder of appellant’s transaction. Wilson testified that the next transaction following the void transaction, amounted to $15.94, which was paid with a $20 bill, and indicated an employee discount credited to Kyles’s discount number.[2] Kyles stated that she observed appellant leave with a Panasonic V.C.R. located on the bottom rack of his cart. Wilson established that the V.C.R. was priced at $399.
Peterson testified that the original transaction indicated twelve items of purchase and the next transaction only indicated two items of purchase. Neither transaction indicated a $399 purchase. Peterson also testified that Allen and Richardson came through Ikner’s station ten to seventeen minutes after appellant departed.
Ikner testified for the State, in return for leniency in a related prosecution for theft from T.G. & Y., in which she pleaded guilty. Ikner acknowledged the void transaction, contending that appellant had approximately ten items in his cart. Appellant gave back three to four items, and she rang up only two items, although there were actually six to seven items left in the cart. Ikner stated that she did not see the V.C.R.; that appellant had not told her it *1302 was in the cart; and that she did not see the V.C.R. box in the cart until appellant was leaving the store. Ikner admitted that she allowed appellant, Richardson and Allen to leave the store without paying for certain items and that she had used Kyles’s employee discount number, which she had obtained from Kyles, on each transaction. Ikner was asked if appellant “came in” with Richardson and Allen, to which she responded, “[N]ot that I recall.”
Appellant testified that the original transaction did not include the V.C.R. because he did not know if he had enough money to pay for the V.C.R. and the additional items. Appellant further stated that he had been saving for the V.C.R. and had the money for the V.C.R. when he entered the store. Appellant stated that he returned various items and then was told by Ikner that the total, including the V.C.R., was approximately $418, and he gave her $420 for the total purchase. According to appellant, he paid Ikner for the V.C.R. and it was at his home on the day of trial. Appellant stated that he did not see Allen or Richardson in the store at the time he was present.
The State asserts two theories in support of the admissibility of the collateral acts of Richardson and Allen: First it is argued that their actions are part of the res gestae of the instant offense, and second, that the evidence is admissible under the common plan or scheme exception to the general exclusionary rule of character evidence.
We note that there is no direct evidence to link appellant with Richardson and Allen. No witness could testify that the three were together at any point in time on January 22, 1985. Appellant had departed the store when Richardson and Allen were processing out; and although Richardson and Allen were actually seen together, appellant was not seen with them. Ikner stated that she did not recall seeing appellant come in the store with Richardson and Allen. While it is obvious from the record that appellant, Ikner, Richardson, and Allen were all acquainted with each other and attended the same church, it is certainly not clear, as argued by the State, that Richardson, Allen, and appellant were engaged in a common criminal enterprise with Ikner. While all three men were obviously in the store at the same time, there is absolutely nothing to establish that they were together or acting in conjunction with each other. We also note that items purchased by each man were in no way related. We view the evidence as tending to establish that Richardson and Allen may have been acting in concert because they were seen together in the store and they checked out at very close intervals to each other. In our opinion, the State failed to connect appellant to the activities of Richardson and Allen.
In Smith v. State, 393 So.2d 529, 531-32 (Ala.Cr.App.1981), we stated, the following:
“While antecedent circumstances tending to shed light on the criminal transaction or elucidate the facts connected therewith are admissible in evidence against the accused, Pope v. State, 365 So.2d 369 (Ala.Cr.App.1978), ‘(a)ntecedent acts of third persons which apparently have no connection with the commission of the crime by the accused are not admissible, unless their connection and relevancy are made apparent by other facts introduced or offered to be introduced in evidence.’ 22A C.J.S. Criminal Law, Section 606 (1961).”
As explained at 22A C.J.S. Criminal Law, § 602 (1961):
“As a general rule, connection with accused must be shown to render evidence admissible against him.
“The rule ‘res inter alios acta’ forbids the introduction of collateral facts which by their nature are incapable of affording any reasonable presumption or inference as to the principal matter in dispute. Evidence as to acts, transactions, or occurrences to which accused is not a party, or as to other matters with which he is not shown to have any connection, being res inter alios acta, is inadmissible, unless it is so interwoven with other relevant evidence as to make it impossible to try the case without admitting it.” (Footnotes omitted.)
*1303 In the instant case, we find no connection to appellant sufficient to allow introduction of the collateral acts of Richardson and Allen. The collateral acts were not so interwoven with appellant’s actions “as to make it impossible to try the case without admitting it” and, therefore, the collateral acts do not constitute a part of the res gestae of appellant’s crime.
The State further argues that the evidence was admissible because appellant was an accomplice in the criminal activities of Richardson and Allen, thereby establishing a common plan or scheme to steal merchandise from T.G. & Y. While discussing proof of other crimes, in Dennison v. State, 17 Ala.App. 674, 677, 88 So. 211, 214 (1921), the court stated, as follows:
“It has been expressly held, however, that usually some connection between the crimes must be shown to have existed in fact and in the mind of the accused, uniting them for the accomplishment of a purpose common to both, before such evidence can be received, and the connection must appear from the evidence. Whether any connection exists is a judicial question, and, if the court does not clearly perceive it, the accused should be given the benefit of the doubt and the evidence should be rejected. The minds of the jurors must not be poisoned and prejudiced against a prisoner by receiving evidence of this description, unless the case comes clearly under the exceptions.”
More recently, in Smith v. State, 401 So.2d 185, 186 (Ala.Cr.App.), cert. denied, 401 So.2d 187 (Ala.1981), it was held that appellant’s “involvment or guilt of such other transactions need not be proven beyond a reasonable doubt for such evidence to be admissible.” The mode of proving other crimes which constitute a common plan, scheme, system, design, or course of conduct has been explained in 22A C.J.S. Criminal Law § 690 (1961), as follows:
“Before evidence of the commission of other crimes by accused is admitted, the trial court should satisfy itself that the evidence substantially establishes the other crimes, accused’s connection therewith, and. their connection with the offense for which accused is being tried; and clear and convincing proof, or the making out of at least a prima facie case, has been required.
“Evidence of a vague and uncertain character, offered for the purpose of showing that accused has been guilty of similar offenses, should not be admitted under any pretense whatever; nor is mere proof of arrest or indictment or mere suspicion, or proof of suspicious circumstances, sufficient.” (Emphasis added, footnotes omitted.)
In the instant case, we hold that there was an insufficient connection between appellant and Richardson and Allen to support the admission of testimony of Allen’s and Richardson’s activities. The evidence adduced at trial constituted merely suspicious circumstances, which might appear to implicate appellant in the crimes committed by Richardson and Allen. Absent facts which connect appellant to the activities of Richardson and Allen, the evidence should not have been submitted to the jury on either the theory of res gestae or the theory of common plan, scheme, system, design, or course of conduct. The trial court committed reversible error in allowing this evidence to be considered by the jury.
Based on the foregoing, this case is due to be, and it is hereby, reversed and remanded.
REVERSED AND REMANDED.
All Judges concur.

. Kyles was fired from her position at T.G. & Y. following the discovery that she allowed Ikner to use her employee discount number for an unauthorized person to purchase merchandise from T.G. & Y. This incident occurred at the same time and in connection with the alleged thefts in the instant case.

. Allen and Richardson were also given an employee discount, credited to Kyles’s discount number.