Two cases were consolidated for trial. Kenneth Ray Houston was convicted of murder in violation of Ala. Code 1975, §13A-6-2, and was sentenced to 53 years' imprisonment. Houston was also convicted of assault in the second degree in violation of § 13A-6-21 and was given a concurrent sentence of 10 years' imprisonment. Houston raises four issues on this appeal from those convictions.
 I
Houston contends that he was prejudiced by the conduct of the trial judge concerning two particular matters.
First, the defendant came to court carrying a loaded .357 caliber handgun inside his coat pocket. He also had six extra bullets and a pint bottle half-filled with rum. The charges in this case involved the use of a 9mm automatic pistol. The victim of the assault had been shot twice in his arm by the defendant. The defendant had shot the murder victim five times. During *Page 279 
these crimes, the defendant also had a .25 caliber automatic pistol in his possession.
After being informed that the defendant was armed, which was after the jury had been selected but before any testimony had been presented, the trial judge conducted a hearing in his chambers.
The defendant had a permit to carry the weapon and stated that he had it "because of some death threats." The trial judge was obviously quite disturbed by this matter and directed the defendant to surrender the handgun and took him into custody for the duration of the trial.
Defense counsel requested a mistrial based on the contention that the defendant's actions might prejudice the trial judge in sentencing in the event of a conviction. The trial judge assured counsel that it would not. However, at the sentencing hearing, the trial judge mentioned the fact that "this gentleman came in court with a pistol. Came in my chamber with a pistol,"[1] in response to the argument of defense counsel that the killing was "a tragic, tragic mistake" and that the shooting was committed in the heat of passion.
During the trial, the judge took precautions to insure that the jury did not know that the defendant was in custody. The defendant's trial lasted two days. At the end of the first day, defense counsel requested the trial judge to "reconsider" his order. In denying that request to release the defendant from custody, the trial judge indicated that there was a significant amount of "friction" involved in this case. He indicated that, considering the fact that the "family" had at least at one time been "after" the defendant and the fact that the defendant was under "a lot of pressure," he was placing the defendant in custody for his own safety and to protect everyone else in the courtroom. Again, the trial judge stated that he was "going to take great care to make sure the jury does not know that he's in jail."
"Every court has power to preserve and enforce order in its immediate presence; to prevent interruption, disturbance, or hindrance to its proceedings; and to control all persons connected with a judicial proceeding before it." Clark v.State, 280 Ala. 493, 497, 195 So.2d 786, 789 (Ala.), cert. denied, 387 U.S. 571, 87 S.Ct. 2071, 18 L.Ed.2d 967 (1967). "The trial court is vested with discretion in the conduct of a trial and appellate courts will not interfere therewith unless it clearly appears that there has been an abuse of discretion."Townsell v. State, 255 Ala. 495, 498, 52 So.2d 186, 189 (1951). See also Smith v. State, 247 Ala. 354, 356, 24 So.2d 546, 547
(1946) (conduct in searching spectators does not violate the right to a public trial); Sims v. State, 146 Ala. 109, 118-19,41 So. 413, 415 (1906) ("It is the right and duty of the court in the administration of the law to maintain its dignity, and to this end exercise its power to preserve an orderly procedure, and to punish for an offense against it. For a witness who has been summoned to testify in a case in court to voluntarily put himself under the influence of liquor, and to have in his pocket a bottle of whiskey when he goes on the witness stand to testify, is offensive both to the order and dignity of the court.").
Furthermore, the defendant should not be allowed to profit by his own improper conduct committed during the course of his trial. Phillips v. State, 443 So.2d 1328, 1331 (Ala.Cr.App. 1983). A motion for a mistrial "is addressed to the sound discretion of the trial court, and its ruling will not be reversed in the absence of a clear showing of abuse of discretion." Ex parte Jefferson, 473 So.2d 1110, 1114 (Ala. 1985), cert. denied, 479 U.S. 922, 107 S.Ct. 328,93 L.Ed.2d 300 (1986).
"There is a presumption that a judge or one sitting in a judicial capacity is qualified and unbiased, and one alleging the contrary has a substantial burden of proof." Moore v.State, 488 So.2d 27, 31 (Ala.Cr.App. 1986) (trial judge was not required to recuse himself after reviewing psychiatric evaluation indicating that defendant *Page 280 
showed absolutely no remorse and that rehabilitation would not be successful). We find that the motion for mistrial on the basis of the alleged prejudice of the trial judge was properly denied.
The second part of this issue concerns the allegation that on two separate occasions the trial judge admonished defense counsel for being "sleazy." At trial, the defendant's defenses were intoxication and that the homicide was committed in the "heat of passion." During the course of the trial, defense counsel attempted to delve into the character of the murder victim and into the relationship between the defendant and the two victims. The defendant contends that Tyrone Jordan and Casey Reeves had had an affair in the past and were going to have one in the future, that Ms. Reeves was "breaking up" with the defendant, and that immediately before the assault and murder, Jordan had been taunting the defendant with what Jordan and Ms. Reeves "used to do when they went together, [and] what they're going to do when they go together [again]."
The trial judge limited defense counsel's line of questioning in this area and made the following comments to defense counsel out of the presence of the jury:
 "But I'm not going to allow you — your conduct has been just an inch slight of being this side of sleaze, Mr. Turberville [defense counsel], in this case. * * * I don't want no more out of you about it. You don't come in here and try cases with these sleaze tactics. * * * You know you had great objections yesterday when I told you you were bordering on being a sleaze with this trial. * * * I didn't say you were a sleaze. I said you were just this side of being sleazy in your conduct in trying this case."
Although we certainly do not approve or condone the comments of the trial judge, we do not find them to constitute reversible error, because they were made outside the presence and hearing of the jury. This Court's statements in Oglen v.State, 440 So.2d 1172, 1174-75 (Ala.Cr.App.), cert. denied, Exparte Oglen, 440 So.2d 1177 (1983), have application here:
 "The general rule is that a judge's improper conduct made in the absence, or without the knowledge, of the jury does not constitute reversible error for the reason that the jury was not influenced by that conduct. . . .
". . . .
 "The record supports the fact that the trial judge did not show defense counsel the degree of professional courtesy and respect to which he was entitled. . . . Granted, the judge's conduct and comments toward defense counsel cannot be approved in several instances. However, our review of the record convinces us that the jury was properly shielded from and unaffected by any prejudicial remarks made by the trial judge outside the jury's presence.
". . . .
 " . . . 'Remarks by the trial judge may be open to criticism, but they are not error unless they have affected the result of the trial.'"
In this case, the discussions held in the judge's chambers reflect obvious "friction" and some degree of hostility between the trial judge and defense counsel. However, "[t]o disqualify a judge for bias, the bias must be shown to be personal,"Ex parte Whisenhant, 555 So.2d 235, 238 (Ala. 1989), and must stem from an extrajudicial source, Ex parte Large,501 So.2d 1208, 1210 (Ala. 1986). In our opinion, the judge's comments in this case do not show a bias against either the defendant or defense counsel personally, but arose out of what the judge learned from his participation in the defendant's trial. Here, Houston has failed to make a clear showing of the bias and prejudice necessary to require the judge's recusal.
 II
The defendant contends that the trial judge erred in limiting testimony tending to show that the homicide occurred in the heat of passion. The defendant testified that he was "angry" at Jordan "because of things that [Ms. Reeves] had been telling [him] about what [Jordan] had said about [him]," and because Jordan "just resented *Page 281 
the fact of [him] coming over there to see [Ms. Reeves]." The implication from the defendant's testimony is that he was angry because Ms. Reeves was ending their relationship and was going to resume a prior liaison with Jordan.
 "A person commits the crime of manslaughter if . . . [h]e causes the death of another person under circumstances that would constitute murder under section 13A-6-2; except, that he causes the death due to a sudden heat of passion caused by provocation recognized by law, and before a reasonable time for the passion to cool and for reason to reassert itself."
Ala. Code 1975, § 13A-6-3.
The record is somewhat confusing as to exactly what evidence the trial judge prohibited defense counsel from pursuing in this regard. Apparently, during his opening remarks, defense counsel made some comment about the 18-year-old victim, Ms. Reeves, going with a 36-year-old man, Jordan. Out of the presence of the jury, the trial judge informed defense counsel that he did not see the probative value of that fact and instructed counsel not to "try the decedent." The judge also informed counsel that he had a right to show that Jordan had been "taunting" the defendant about their relationship in Ms. Reeves's presence.
On cross-examination by defense counsel, Jordan testified that he had "tried to go with" Ms. Reeves in the past but that he was not trying to go with her again. He specifically denied taunting the defendant about his past or future relationship with Ms. Reeves. When defense counsel attempted to pursue this matter a second time, the trial judge interrupted him and asked, "What does that have to do with these issues?" The trial judge indicated that the defendant's anger over Jordan's taunts had nothing to do with the murder of Ms. Reeves, and instructed counsel to "stay away from it unless you're using it on the assault charges" involving Mr. Jordan or "[u]nless you can show what it had to do between the injuries allegedly this man received or unless there's some evidence that Casey participated in something other than these inuendoes that you're spreading all over the courtroom about how old she was and who she slept with."
At the time of her death, Ms. Reeves had been living with Jordan's sister, Kathy Davis, for about three months. On direct examination of the defendant, defense counsel asked if there were any other men spending the night at Ms. Davis's residence the night of the murder. After objection by the prosecutor, the trial judge indicated that he would allow defense counsel to pursue this matter in order to impeach the testimony of Ms. Davis, who had previously stated that no man spent the night on that particular night, although Mr. Jordan had testified that he had.
The trial judge did charge the jury on the offense of manslaughter. However, to the extent, if any, that the trial judge prevented defense counsel from attempting to establish "a sudden heat of passion caused by provocation recognized by law," the rulings of the trial judge constitute only harmless error because, in our opinion, the defense was clearly developed and presented to the jury. "[W]here objection is sustained, but the party, nevertheless, proceeds to get in the evidence sought, in substance and effect, which is not excluded and remains for the jury's consideration, the initial ruling, if erroneous, is harmless." Roberson v. State, 233 Ala. 442,444, 172 So. 250, 251 (1937). The exclusion of admissible evidence does not constitute reversible error where the evidence "would have been merely cumulative of other evidence of the same nature, which was admitted." Ex parte Lawson,476 So.2d 122 (Ala. 1985).
In this case, Ms. Reeves's character was irrelevant and immaterial. See Hall v. State, 208 Ala. 199, 202, 94 So. 59, 62
(1922); Holloman v. State, 349 So.2d 131, 133 (Ala.Cr.App. 1977). Thus, the questions of whether Ms. Reeves was only 18, whether she had lied about her age, and whether she was dating a 36-year-old man had nothing to do with the issues in this case. "The wide latitude and extent of cross-examination may be subjected to the trial judge's limited discretion to stop questioning *Page 282 
that is repetitious, irrelevant, harassing, annoying, or humiliating, or [that] concerns wholly collateral matters."Riley v. City of Huntsville, 379 So.2d 557, 560 (Ala. 1980). It is within the discretion of the trial court to refuse questions which call "for a mere repetition of witness' testimony already in [the] possession of the jury." Newman v. State, 160 Ala. 102,105, 49 So. 786, 787 (1909).
 III
The trial judge properly refused the defendant's requested jury charge on assault in the third degree because there was no factual basis to support the finding of such an offense.
Assault in the third degree, when committed with a deadly weapon, involves criminal negligence. Ala. Code 1975, §13A-6-22(a)(3). Criminal negligence involves the failure "to perceive a substantial and unjustifiable risk that the result [which is defined by statute as an offense] will occur or that the circumstance [which is defined by statute as an offense] exists." § 13A-2-2(4). On cross-examination, the defendant admitted that he knew that if a bullet struck Jordan it would "hurt" him. "The court shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense." §13A-1-9(b).
 IV
We find no error in the admission into evidence of a photograph depicting the victim with wooden probes protruding from her wounds in an attempt to exhibit the angle of the wounds.
 "It is clear that, in a charge of homicide or other assault, the State may introduce a duly authenticated photograph of so much of the victim's body as is necessary to show wounds inflicted by the accused. The fact that the photograph of the victim's body is gruesome is not, without more, an appropriate ground upon which to exclude it as evidence."
C. Gamble, McElroy's Alabama Evidence, § 207.01(2) (3d ed. 1977) (footnotes omitted). Cf. Voudrie v. State, 387 So.2d 248,255 (Ala.Cr.App.), cert. denied, 387 So.2d 256 (Ala. 1980) (photographs of the victim's body admissible "even though [they] contained marks of the surgery performed on the deceased when she was taken to the hospital following the shooting").
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.
[1] Although the record attributes this statement to the prosecutor, it is reasonably clear that it was in fact made by the trial judge.