BOWEN, Presiding Judge.
Jimmy D. Jenkins, the appellant, was convicted of assault in the second degree and was sentenced to ten years’ imprisonment as a habitual felony offender. He raises three issues on this direct appeal from that conviction.
I.
We hold that the trial court did not err in refusing to admit into evidence the logbook of the Auburn Hunting Club. We find that even if the logbook is considered “a business record,” an issue we do not decide, the appellant failed to establish an adequate predicate for its admission.
There was eyewitness testimony that the appellant cut Bart Condray with a knife at approximately 10:15 on the night of December 22, 1990, outside the Warehouse Lounge in Gadsden, Alabama. The defense presented the alibi testimony of three witnesses who testified that the appellant was at the Auburn Hunting Club, located 10 to 15 miles from Auburn, Alabama, at that time of the crime.
The Hunting Club is composed of 2000 acres and is divided into sections. Only one person may hunt any one section at a time. Before hunting, a hunter must enter his name in the logbook as being “in” a particular section. After hunting, the hunter marks himself “out.” Entries in the logbook are made on the honor system. The main reason for the logbook was for “safety,” to “keep anybody clear in your area.” R. 102.
The entries in the logbook show that the appellant and his three companions hunted on December 22 and 23, and that the appellant hunted on December 24. Specifically, the entries indicate that the appellant, identified in the logbook as “Jimmy J,” hunted the “Red House Plot” on December 22 in the “p.m.”; that he hunted the “on ridge east of *1147 b[r]ook” on December 23 in the “am/pm.”; and that he hunted the “cutover plot” on December 24 in the “12:00/pm.” CR. 117, 118, 119.
The trial court refused to allow the logbook into evidence:
“If it comes under the business exception to hearsay, he would have to show that he was the custodian of the book, that he was the keeper of the record, and that he has knowledge about who signed it and when they signed it. And based on that, I would sustain the objection.” R. 107.
This action of the trial court was proper.
“Testimony by any witness, frequently the custodian of the record, that the document now exhibited to him is a record of the business; that he knows the method (i.e., the standard operating procedure) used in the business of making records of the kind now exhibited to him; and that it was the regular practice of the business to make records of such kind and to make them at the time of the event recorded or within such specified period thereafter as could be found by the trier of fact to be reasonable, is a sufficient authentication of the record to require its admittance in evidence.
“... [Pjroof that the record is a correct statement of the act, transaction, event or occurrence purporting to be recorded, need not be made by a witness having personal knowledge of the act, transaction, event or occurrence.”
C. Gamble, McElroy’s Alabama Evidence § 254.01(3) (4th ed. 1991) (footnotes omitted).
When asked if he were “basically the keeper of that logbook,” defense witness Allen Partee replied, “Yes," sometimes, just depends on who is down there at the time.” R. 101. He further testified that during the hunting season he was not the keeper of the logbook but that “the logbook stayed [at the hunting club] to sign in and out.” R. 104. He did keep the logbook after the season was over. Partee could not testify with any degree of assurance as to when the signatures, other than his own, were placed in the book.
“A [business] record is not admissible if the source of information or method or circumstances of its preparation indicate a lack of trustworthiness.” W. Schroeder and J. Hoffman, Alabama Evidence 427 (2d ed. 1993).
“Liberal as we are to the fullest use of 28 U.S.C.A. § 1732, there are two prerequisites both of which are to be demonstrated to permit admission of business records. First, the Federal Business Records Act states that the offeror must establish that the records were kept in the regular course of business_ Secondly, testimony must be given by a custodian adequately authenticating the record’s accuracy and explaining the efforts employed to ensure this accuracy....
“It is the circumstances under which the records are recorded, kept, maintained and used that gives the reliability essential to the law’s conclusion that without any independent recollections by those who made the succession of entries they are reliable, precisely because the business relies on them for important business judgments ....
“While the trial court does have wide discretion in determining the admissibility of documents as business records, ... there must be minimal authentication proof to give them reliability.”
United States v. Blake, 488 F.2d 101, 105 (5th Cir.1973) (footnotes omitted). “The very essence of the admissibility of a business record is its probability of trustworthiness.” Neal v. State, 372 So.2d 1331, 1343 (Ala.Cr.App.), cert. denied, 372 So.2d 1348 (Ala.1979).
Furthermore, we find that any possible error in the refusal to admit the logbook into evidence was only harmless error. Rule 45, A.R.App.P. Three witnesses testified that the appellant could not have been in Gadsden at the time of the crime. However, the entries in the logbook did not establish that the appellant could not have traveled to Gadsden after hunting and returned from Gadsden to hunt the next day. Error in the exclusion of evidence is harmless where other evidence of the same substance and effect is present before the jury. Roberson v. State, 233 Ala. 442, 444, 172 So. 250, 251 (1937). See also Ex parte Randle, 554 So.2d 1131, 1134 (Ala.1987).
*1148 II.
Defense counsel announced “satisfied” with the oral instructions of the trial court to the jury. R. 124. There was no objection to the court’s alibi instructions. Any error in those instructions has not been preserved for review. Rule 21.2 A.R.Crhn.P.
III.
The appellant’s argument that the State’s evidence is insufficient to support his conviction is without merit. The credibility of eyewitness testimony identifying the appellant as the assailant was a question for the jury. “A verdict on conflicting evidence is conclusive on appeal. ... ‘[A]libi evidence is always a jury question.’ ” Granger v. State, 473 So.2d 1137, 1139 (Ala.Cr.App.1985).
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.