The appellant, Jerry Bernard Houston, was convicted of criminally negligent homicide, a violation of § 13A-6-4, Ala. Code 1975. Houston was sentenced to 10 months in the Clarke County jail.
 I.
Houston contends that the trial court erred in denying his motion to suppress the statement he made to the police. *Page 706 
Specifically, he argues that he was unable to voluntarily, knowingly, and intelligently waive his constitutional rights because, he says, he was physically impaired at the time he made the statement.
It has long been the law that a confession is prima facie
involuntary and inadmissible, and that before a confession may be admitted into evidence, the burden is upon the state to establish voluntariness and a Miranda predicate. Jackson v. State,562 So.2d 1373, 1380 (Ala.Cr.App. 1990). A two-pronged test is used to determine whether an accused's statement is admissible. First, the trial court must determine whether the accused was informed of his Miranda rights. Second, the trial court must determine whether the accused voluntarily and knowingly waived his Miranda
rights before making his statement. Putman v. State, 649 So.2d 1328,1330 (Ala.Cr.App. 1994); Holder v. State, 584 So.2d 872,878 (Ala.Cr.App. 1991); Carpenter v. State, 581 So.2d 1277, 1278
(Ala.Cr.App. 1991).
Whether a waiver of Miranda rights is knowingly and intelligently made depends on the facts of each case, considering the totality of the circumstances surrounding the interrogation, including the characteristics of the accused, the conditions of the interrogation, and the conduct of law enforcement officials.Staten v. State, 547 So.2d 603 (Ala.Cr.App. 1988), rev'd on other grounds, 547 So.2d 607 (Ala. 1989); Moore v. State, 415 So.2d 1210
(Ala.Cr.App. 1982), cert. denied, 459 U.S. 1041,103 S.Ct. 459, 74 L.Ed.2d 610 (1982).
 "`The standards for appellate review of a trial judge's determination of the admissibility of a confession were enumerated in Williams v. State, 461 So.2d 834, 838
(Ala.Cr.App. 1983), reversed on other grounds, Ex parte Williams, 461 So.2d 852 (Ala. 1984):
 "`"(1) The test for voluntariness involves a consideration of the totality of the circumstances. Haynes v. Washington, 373 U.S. 503, 513-14, 83 S.Ct. 1336, 1342-43, 10 L.Ed.2d 513
(1963). (2) `The admissibility of confessions is for the court, their credibility is for the jury.' Phillips v. State, 248 Ala. 510, 520, 28 So.2d 542 (1946). (3) Where the voluntariness inquiry presents conflicting evidence and the trial judge finds that the confession was voluntarily made, great weight must be given his judgment. `(W)here there is a genuine conflict of evidence great reliance must be placed upon the finder of fact.' Blackburn v. Alabama, 361 U.S. 199, 208, 80 S.Ct. 274, 281, 4 L.Ed.2d 242 (1960). (4) This finding will not be disturbed on appeal unless the appellate court is convinced that the conclusion is palpably contrary to the great weight of the evidence and manifestly wrong. Harris v. State, 280 Ala. 468, 470-71, 195 So.2d 521 (1967). (5) Even where there is credible testimony to the contrary, if the evidence is fairly capable of supporting the inference that the rules of freedom and voluntariness were observed, the ruling of the trial court need only be supported by substantial evidence and not to a moral certainty. Thompson v. State, 347 So.2d 1371, 1375 (Ala.Cr.App.), cert. denied, 347 So.2d 1377
(Ala. 1977), and cases cited therein. `Review of the court's actions is limited to determining whether its finding was clearly erroneous.' United States v. Greer, 566 F.2d 472, 473 (5th Cir. 1978)."'"
 "Musgrove v. State, 519 So.2d [565], 576 [(Ala.Cr.App. 1986)]."
Whittle v. State, 518 So.2d 793, 796 (Ala.Cr.App. 1987). *Page 707 
Applying the foregoing law to the facts of this case, we conclude that the trial court did not err in finding that Houston's statement was voluntary. At the suppression hearing Robert Hyde, a corporal for the Clarke County Sheriff's Department, testified that he interviewed Houston while he was at the Grove Hill Hospital, where he had been taken shortly after the fight between him and Maxie Ely, the victim. The record indicates that Houston was taken to the hospital by family members after the shooting. According to Hyde, he arrived at the hospital at 1:27 p.m., went immediately to the emergency room, and conducted the interview. Hyde testified that although Houston's face was bloody, Houston's speech was coherent and Houston appeared to understand his Miranda rights. Hyde testified that Houston waived hisMiranda rights orally, did not sign a written waiver, and made the following statement:
 "I [Houston] went to Emma White's house. My Wife was hanging up clothes. She was coming out the back door. I asked her what was going on. She said nothing. I went in the back. Maxie Ely was in the back room on the left. I carried a rifle with me. I pushed the door open. Maxie got the rifle and broke the stock. He started beating me with the rifle and his fists. He picked me up off the floor, and I passed out. When I woke up, Maxie was lying on the floor. I staggered over him and walked out the back door. There was no one else in the house."
(R. 217.)
The defense presented testimony from Dr. Garrett Miller, the director of the emergency room at Grove Hill Hospital to challenge the voluntariness of Houston's statement. Dr. Miller did not treat Houston. His testimony was based on his review of Houston's medical records. Dr. Miller testified that the records indicated that when Houston was admitted to the hospital at 1:30 p.m., he was alert and oriented, but slightly groggy, and that at 1:45 p.m., Houston was given medication for a grand mal seizure. According to Dr. Miller, the assessment of Houston as "groggy" and the nature of Houston's injuries made him doubt that Houston understood his Miranda rights. Dr. Miller, however, unequivocally stated that he did not talk with the attending physician and that his opinion was based solely on Houston's medical record.
When the trial court denied Houston's motion to suppress the statement, it noted that it was not required to "accept solely the opinion of [Dr. Miller], who didn't even treat [Houston]." (R. 251.) We agree. We acknowledge that the testimony of Dr. Miller, in light of the nature of Houston's injuries, appears compelling[1]; however, the state presented substantial evidence to support the trial court's finding that "the rules of freedom and voluntariness were observed." Hyde testified that Houston understood his rights and that he voluntarily waived them. Hyde admitted that because of the circumstances of the interview, Houston did not execute a waiver of his rights, but that Houston orally waived his rights. We note that although not a factor on the issue of voluntariness, the details of the statement made by Houston lessens the strength of the argument that Houston was incoherent and unaware that he was making a voluntary statement. Additionally, Hyde's testimony was not challenged by anyone who observed Houston either before, during, or after he made *Page 708 
the statement. Indeed, Dr. Miller admitted on cross-examination that Houston's treating physician was in the best position to assess Houston's mental state when he arrived at the emergency room and received treatment. Thus, we conclude that the trial court's finding that Houston's statement was made voluntarily is supported by substantial evidence.
An appellate court's review of a trial court's determination of voluntariness is confined to determining whether the finding was clearly erroneous. We cannot reach such a conclusion in this case; the trial court did not err in admitting Houston's statement in evidence.
 II.
Houston contends that the "verdict is contrary to law and to the great weight of the evidence in that the facts and evidence do not support a verdict of criminally negligent homicide."[2]
(Houston's brief to this Court at p. 21.)
In deciding whether the state presented sufficient evidence to support a conviction, this Court must view the evidence in the light most favorable to the prosecution. Bayhi v. State,629 So.2d 782, 788 (Ala.Cr.App. 1993). We must accept as true evidence introduced by the prosecution, make all legitimate inferences from that evidence, and consider that evidence in the light most favorable to the prosecution. McKinney v. State,654 So.2d 95, 99 (Ala.Cr.App. 1995); Johnson v. State, 623 So.2d 444,447 (Ala.Cr.App. 1993). It is not the province of this Court to reweigh the evidence. Council v. State, 682 So.2d 495, 497
(Ala.Cr.App.), cert. denied, 682 So.2d 500 (Ala. 1996); Black v.State, 680 So.2d 942, 944 (Ala.Cr.App. 1995). "Conflicting evidence presents a jury issue." Curry v. State, 601 So.2d 157,159 (Ala.Cr.App. 1992), citing Smith v. State, 583 So.2d 990
(Ala.Cr.App.), cert. denied, 583 So.2d 993 (Ala. 1991). This Court will not substitute its judgment for that of the jury as to the sufficiency of the evidence to sustain a conviction. Brandonv. State, 542 So.2d 1316, 1319 (Ala.Cr.App. 1989). "[C]ircumstantial evidence is entitled to the same weight as direct evidence, provided it points to the guilt of the accused."Stephens v. State, 580 So.2d 11, 24 (Ala.Cr.App. 1990), aff'd,580 So.2d 26 (Ala. 1991), cert. denied, 502 U.S. 859, 112 S.Ct. 176,116 L.Ed.2d 138 (1991).
In Zumbado v. State, 615 So.2d 1223, 1241-42, (Ala.Cr.App. 1993), this Court stated:
 "`[T]he weight of the evidence' refers to `a determination [by] the trier of fact that a greater amount of credible evidence supports one side of an issue or cause than the other.' Tibbs v. Florida, 457 U.S. [31], 37-38, [102 S.Ct. 2211, 2216, 72 L.Ed.2d 652 (1982)] . . . We have repeatedly held that it is not the *Page 709 
province of this court to reweigh the evidence presented at trial. . . . `The credibility of witnesses and the weight or probative force of testimony is for the jury to judge and determine.' Harris v. State, 513 So.2d 79, 81
(Ala.Cr.App. 1987)."
(Citations omitted.)
Section 13A-6-4, Ala. Code 1975, provides that "[a] person commits the crime of criminally negligent homicide if he causes the death of another person by criminal negligence." Section13A-2-2(4) defines criminal negligence as follows:
 "A person acts with criminal negligence with respect to a result or to a circumstance which is defined by statute as an offense when he fails to perceive a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation."
In Wakefield v. State, 447 So.2d 1325, 1326 (Ala.Cr.App. 1983), this court held:
 "[Criminally negligent homicide] involves inadvertent risk creation coupled with the actor's failure to perceive [the risk] which `constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation.'"
The evidence indicated that in May 1998, Houston and his wife lived in Clarke County, Alabama. Maxie Ely and his wife lived in Louisiana. Houston's wife and Ely had been having an extramarital affair since May 1996. In November 1997, Ely's wife began calling Houston informing him of his wife's affair with Ely. On May 15, 1998, Ely's wife called Houston at work and told him that Ely was in Clarke County, Alabama.
After receiving the telephone call, Houston left work to find his wife. He found his wife's car at Emma White's house; all the lights in the house were off. When Houston knocked on the house's locked front door, no one answered. Houston returned to his car and got a rifle out of the trunk. Houston then walked to the back of the house with the loaded weapon. As he approached the back door, his wife walked out carrying a basket of clothes. According to Houston's statement, when he pushed open a door Ely assaulted him, grabbed his rifle, and used it to beat him. Houston further stated that at some point during the fight, he passed out, but when he awakened, Ely was lying on the floor. When law enforcement officers arrived at White's house, Ely had no pulse. The testimony indicated that Ely died from a gunshot wound to his leg.
Viewing this evidence in a light most favorable to the state, the state presented sufficient evidence to sustain Houston's conviction for criminally negligent homicide. Houston's act of retrieving a loaded weapon and walking into the house with it in search of Ely indicates at a minimum that he failed to perceive a substantial and unjustifiable risk that the weapon would be discharged. The jury could clearly infer that Houston's actions under the facts of this case "constitute[d] a gross deviation from the standard of care that a reasonable person would observe in the situation." We will not disturb the jury's determination.Zumbado v. State, supra.
The judgment of the trial court is affirmed.
AFFIRMED.
Long, P.J., and McMillan, Cobb, and Baschab, JJ., concur.
[1] Dr. Miller testified that Houston suffered the grand mal seizure and respiratory problems because of severe injuries to his head.
[2] In his brief to this Court, Houston appears to implicitly argue within this issue that the trial court erred when it refused to recharge the jury on the defenses of accident and self-defense. After the jury had begun its deliberations, it requested to be recharged on the elements of the offense and the lesser included offenses. The trial court recharged the jury on the offenses, but refused to recharge the jury, as Houston requested, on the defenses of accident and self-defense. We find no error in the trial court's failure to restate this portion of its charge.
 "`When a jury requests additional instructions the recommended practice is for the trial court to remain within the area of the specific request in making his response. . . . A trial judge is not required to repeat any other part of his oral charge when answering a specific inquiry from the jury. . . . It is assumed that the jury will consider the previously given instructions along with those given in the supplemental charge. . . .'"
Miller v. State, 645 So.2d 363, 365 (Ala.Cr.App. 1994) (citations omitted). *Page 710