COBB, Judge, dissenting.
The majority upholds Walter Lee Morgan’s murder conviction. I disagree with the majority’s analysis concerning the trial court’s refusal to allow defense witness Larry Hallett to give his opinion of Morgan’s mental condition.
I believe that the trial court erred by refusing to allow Morgan to present testimony from Lawrence Hallett, Morgan’s attorney during his divorce. Morgan wanted Hallett to testify to show Morgan’s state of mind before the murder. The trial court refused to allow Hallett to testify, stating that his testimony would be cumulative to that of Morgan’s 98-year-old neighbor and landlord, her 49-year-old grandson, and Morgan’s sister. “It is within the trial court’s discretion to exclude cumulative evidence.” Williams v. State, 710 So.2d 1276, 1327 (Ala.Crim.App.1996), aff'd, 710 So.2d 1350 (Ala.1997). “Matters resting in the sound discretion of the trial court will not be disturbed, absent a clear abuse of discretion.” Pressley v. State, 770 So.2d 115, 133 (Ala.Crim.App.1999). Each of these witnesses essentially testified to changes in Morgan’s demeanor after his marriage to the victim. They testified that Morgan acted distracted, withdrawn, as if he was about to have a nervous breakdown, and acted like he was in “another world.”
Hallett had represented Morgan in Morgan’s 1994 divorce. In 1998 Hallett saw Morgan again and noticed a marked change in Morgan’s demeanor from 1994. When the defense attempted to question Hallett about that change in Morgan, the trial court sustained the State’s objection. The following transpired at trial.
“Q. [By Mr. Brutkiewicz, defense attorney]: Please state your name.
“A. My name is Lawrence Hallett.
“Q. Mr. Hallett, you’re a licensed practicing attorney in Mobile, are you not?
“A. I am.
*954 “Q. To get to the point, you practice primarily domestic relations law; correct?
“A. That’s correct.
“Q. Do you know Mr. Walter Morgan? “A. Ido.
“Q. When did you first begin to know Mr. Walter Morgan?
“A. According to my file, I first met Mr. Morgan in 1994.
“Q. Just briefly, why were you — what was the purpose of your encounter with him?
“A. His family had retained me to represent him on a divorce case.
“Q. And, at that time, did you have an opportunity to speak with Mr. Morgan and talk to him and—
“A. I did.
“Q. Did you go to Court with him?
“A. I did.
“Q. Around 1998 or thereabouts, did you have occasion to see Mr. Morgan again?
“A. I did.
“Q. Had he, in your opinion, changed?
“MR. NAMAN [(the prosecutor)]: Judge, I object.
“THE COURT: Sustained.
“MR. BRUTKIEWICZ: Okay. Strike that. Your Honor, I’ll make a proffer that Mr.—
“THE COURT: Not in the presence of the jury.
“MR. BRUTKIEWICZ: All right, sir. May we approach the bench?
“THE COURT: Do you want this on the record?
“MR. BRUTKIEWICZ: I don’t need it on the record, Judge.
“THE COURT: Okay.
“(BENCH CONFERENCE, OFF THE RECORD.)
“(BENCH CONFERENCE CONCLUDED.)
“THE COURT: Would the jury please retire to the jury room for just a moment, please.
“(JURY NOT PRESENT)
“MR. BRUTKIEWICZ: Prior to Mr. Hallett beginning his testimony, we had a sidebar. Mr. Ñaman had spoken to Mr. Hallett and Mr. Ñaman told you that in his opinion the only thing that Mr. Hallett knew was that he had represented Mr. Morgan in 1994 and that he had some troubles understanding the legal process and that sort of thing. And I told you that Mr. Ñaman was misunderstanding the purpose for which I was offering Mr. Hallett’s testimony.
“Mr. Hallett would testify, I proffer, that in 1998, that he noticed a marked change in Mr. Morgan from when he represented him in 1994; that he had gotten thin; that he seemed to be troubled and that he was disconnected with regard to the circumstances of their conversation, and the situation at the time, without going into it much further. But Mr. Hallett will give the opinion that he thought Mr. Morgan was disconnected; that he had changed; that there was a marked change in him and that Mr. Hallett was concerned about his well-being.
“Now, I think the 1998 encounter, which is close in time to the events that have been — to which there has been testimony throughout this trial is certainly relevant about Mr. Hallett’s observations of his client. The reason why I wanted to get into, briefly, his observations of him and his perceptions of him, and that being Mr. Morgan in 1994, is to show the contrast. Now, if Mr. Ñaman objects to the testimony about the interactions of Mr. Hallett with Mr. Morgan *955 in 1994 and the Court is going to sustain that, well, then, I still need to and I want to elicit, from Mr. Hallett, what Mr. Morgan’s condition was in '98 and the change in his condition. And the change in his appearance is germane to the issue of whether or not he was suffering from mental disease or defect. That’s already been testified to by other witnesses. And Mr. Hallett is not going to testify much differently from what these other witnesses were saying; that he lost weight; that he was — to use what Mr. Hallett is going to say — he became disconnected. Other people have said that he’s gone crazy; other people have said he was having a nervous breakdown. But that’s what I’m going to proffer to the Court.
“THE COURT: You’ve made your showing for the record. Who’s your next witness?
“MR. BRUTKIEWICZ: You’re not going to allow Mr. Hallett to testify to any of those things; is that correct?
“THE COURT: That’s correct.
“MR. BRUTKIEWICZ: Then I have— we have no other witness. We rest.”
R. 33A-37.
The trial court excluded the evidence because it held that the evidence was cumulative. Cumulative evidence, has been defined as evidence “that supports a fact established by the existing evidence,” Black’s Law Dictionary 577 (7th ed.1999); “as additional evidence of the same general character as evidence received on the trial to the same fact or point,” Thompson v. State, 444 So.2d 899, 900 (Ala.Crim.App.1984); and as, “[e]vidence of the same kind to prove the same probative fact,” 66 C.J.S. New Trial § 143 (1998).
The proffer made concerning the testimony of Morgan’s former counsel may have contained descriptions of Morgan’s abnormal behavior that was similar to the testimony of other witnesses, but the possible additional credibility that it would be given certainly removes it from the typical definition of cumulative evidence. Hallett was an attorney, a professional person who conceivably had had contact with many mentally and emotionally disturbed people. The jury could have found his testimony to have much more weight because of his level of education and his lack of bias. “ ‘ “[T]he weight of the evidence” refers to “a determination [by] the trier of fact that a greater amount of credible evidence supports one side of an issue or cause than the other.” ’ ” Houston v. State, 798 So.2d 704, 708 (Ala.Crim.App.2000)(quoting Zumbado v. State, 615 So.2d 1223, 1241-42 (Ala.Crim.App.1993), in turn quoting Tibbs v. Florida, 457 U.S. 31, 37-38,102 S.Ct. 2211, 2216, 72 L.Ed.2d 652, 457 U.S. 31 (1982)).
The defendant “ ‘has the burden of proving the defense of insanity by clear and convincing evidence.’ ” Montgomery v. State, 781 So.2d 1007, 1015 (Ala.Crim.App.2000)(quoting § 13A-3-1, Ala.Code 1975). Thus, the burden rested squarely on Morgan to prove that he suffered from a mental disease or defect. The trial court should not have curtailed his ability to meet that burden. Morgan attempted to meet his burden by presenting testimony from various witnesses — relatives and friends — who had observed his behavior. The testimony of these witnesses was similar to the proffered testimony. However, because “ ‘[t]he credibility of witnesses and the weight or probative force of testimony is for the jury to judge and determine,’” Houston v. State, 798 So.2d at 709, it could be argued that Hal-lett was an essential witness for Morgan in this case because he was the witness with the least appearance of bias for Morgan. In this position, his testimony also added credibility to the testimony of those witnesses close to Morgan.
*956 This court has reversed convictions based on distinguishing the characteristics of a particular witness even though the testimony proffered would have been similar to, or could have corroborated, the testimony of other witnesses. In Nettles v. State, 683 So.2d 9 (Ala.Crim.App.1996), this Court found that exclusion of testimony to be given on behalf of the appellant was not harmless error.
“We acknowledge the rule that ‘[t]he exclusion of admissible evidence does not constitute reversible error where the evidence “would have been merely cumulative of other evidence of the same nature, which was admitted.” ’ Houston v. State, 565 So.2d 277, 281 (Ala.Cr.App.1990). Nonetheless, while the excluded testimony supported the appellant’s own testimony, it was not ‘merely cumulative.’ ‘In Dickerson [v. Alabama, 667 F.2d 1364, 1370 (11th Cir.1982), cert. denied, 459 U.S. 878, 103 S.Ct. 173, 74 L.Ed.2d 142 (1982)], the Eleventh Circuit held that the testimony of an absent witness, a police officer, “could not be considered cumulative of similar testimony by Dickerson’s relatives and friends” because “testimony by a police officer would have lent a new aura of credibility to Dickerson’s alibi defense.” ’ Barton v. State, 494 So.2d 943, 950 (Ala. Cr.App.1986).”
Nettles v. State, 683 So.2d 9, 13-14 (Ala.Crim.App.1996).
I believe Hallett’s testimony could have been viewed by the jury as being in a different class or of a different quality than the other cumulative evidence. Unlike the prior witnesses, Hallett was a professional, with no perceptive personal bias in favor of Morgan — he was neither neighbor nor relative. It is entirely possible that the jury could have afforded more weight to Hallett’s testimony than other witnesses who presented similar testimony.
I recognize that the abuse-of-discretion standard would be more readily met if a stronger proffer had been made. Nevertheless, I still maintain that Morgan’s right to a fair trial was violated when the trial court prohibited him from calling his former legal counsel as a witness. Although the trial court has authority to limit cumulative evidence, I do not believe that rejection of Hallett’s testimony was harmless to Morgan.
It is for the above reason, that I respectfully dissent.