The appellant, Lamar Christovia Nettles, was convicted of kidnapping in the first degree and burglary in the second degree. He was sentenced to life imprisonment for the kidnapping conviction and to 35 years' imprisonment for the burglary conviction, with the sentences to run consecutively.
The appellant contends that, in three instances, the trial court erred in excluding testimony he sought to elicit. Because we reverse the appellant's convictions based upon the second and third instances, we need not address the first instance complained of by the appellant.
The State's evidence, which was adduced at trial primarily through the testimony of the complaining witness, Tim L. Phillips, tended to show that late on the night of October 1, 1993, Phillips, the manager of a McDonald's restaurant, closed the restaurant and returned home to his apartment complex, where a masked gunman approached him and ordered Phillips into the passenger seat of Phillips's car. The gunman then drove around. According to Phillips, after the gunman had driven around for some time, he bound Phillips's hands and legs with wire, laid him down in the backseat of the car, and drove to a location near the restaurant. Phillips testified that the gunman then forced him to give him the key to the restaurant and to tell him the combination to the safe. The gunman then got out of the car. After the gunman left, Phillips was able to free his legs from the wire binding them. He got out of the car and walked to a nearby convenience store. He reported the incident to a police officer who was at the store. Police officers subsequently converged on the restaurant and the appellant was apprehended inside. A revolver was found inside the restaurant. A patdown of the appellant revealed some fabric that appeared to have been cut to form a mask. Phillips, who had returned to the restaurant with the police, immediately identified the appellant as the man who had abducted him. The appellant was Mirandized and gave a confession to police that corroborated Phillips's account of the incident.
The appellant was the first witness to testify for the defense. In contrast to his statement to police and to Phillips's testimony, the appellant testified that he had conspired with Phillips, Leticia Dennis (another employee of the restaurant), and Russell Sargent (Dennis's boyfriend), to steal the cash receipts from the restaurant safe. According to the appellant, the four had agreed that Phillips would provide the appellant with the key to the restaurant and the combination to the safe, that the appellant would steal the money from the safe, that Dennis and Sargent would take the appellant's car during the crime, and that after the crime they all would meet at the appellant's apartment to divide the money. The appellant testified that under the plan they had devised Phillips was to wait between five and ten minutes after the appellant had gone inside the restaurant before notifying the police that he had been kidnapped. The appellant testified that he was apprehended inside the restaurant because he was unable to open the safe and had remained in the restaurant longer than planned. The appellant testified that he had originally confessed to the kidnapping and had not told police about the conspiracy because he wanted to protect his friends.
During the direct examination of the defense's second witness, Sabrina Jones, the following occurred:
 "Q [appellant's counsel]: Sabrina, I'm going to take you back to about a week before the 1st of October — about a week before October the 1st, did you have an occasion to be over at Lamar Nettles['s] place?
"A: Yes, sir.
 "Q: And while you were there, who — first of all, who was there?
 "A: It was Lamar [the appellant], Russell [Sargent] and the girl named Ticia [Leticia Dennis].
"Q: You remember Ticia?
"A: Yes, sir.
"Q: Was she the one that worked at McDonald's?
 "A: I didn't know where she worked at, but they were talking. *Page 11 
 "Q: Did you get antsy and upset over the conversation?
"A: Yes, sir.
"Q: And left, did you not?
"A: Yes, sir.
 "Q: But before you left, it was your understanding that —
 "MR. YORK [prosecutor]: I'm going to object to Mr. White's surmising her understanding. And I object —
 "THE COURT: I will sustain the objection. I understood her testimony to be that she was present with Sargent and somebody else. Is that everybody there?
"MR. WHITE [appellant's counsel]: Yes, sir.
"THE COURT: Proceed.
 "Q: (By Mr. White) Was a conversation — was the topic the McDonald's robbery and the manager was going to supply the key and the combination —
 "MR. YORK: Your Honor, I object to Mr. White's leading questions and would ask him to wait till I state my objection. If the victim in this case, Mr. Phillips, was not present, I object to any testimony as to the conversation.
"THE COURT: I sustain the objection.
 "Q: (By Mr. White) Did you leave because you were upset?
"A: Yes, sir.
 "MR. WHITE: That's all I have. Is that what the conversation was about?
 "MR. YORK: Judge, I object. Doesn't matter what the conversation was about. She left and this man wasn't present.
 "MR. WHITE: Judge, she can testify [as to] the reason why she left as her emotional operation.
 "THE COURT: Well, it may be in your mind, but the Court has sustained the objection to it and I don't know how many times I have to rule on this matter, Mr. White. You continue asking this question."
R. 110-12.
During the direct examination of the defense's third witness, Lamar Christovia Nettles, Sr., the appellant's father, the following occurred:
 "Q: Lamar, the day after this occurred, did you have a conversation — I'm not asking you what was said, did you speak or have a conversation — without testifying to what they said [with] Russell or Ticia?
"A: Yes.
"Q: Was it about bringing the car back?
"A: Right.
"Q: Whose car was it?
"MR. YORK: Judge, I object to —
"THE COURT: Sustain the objection.
"A: It was my son's car.
"MR. WHITE: That's all I have.
 "MR. YORK: Judge, I ask you to instruct the jury —
 "THE COURT: Ladies and gentleman, the question was objected to, the objection was sustained, which means that the question was not proper and any answer which was made by the witness in this case should be disregarded by you. Let's proceed."
R. 112-13.
The appellant argues that the testimony he sought to elicit from Sabrina Jones and Lamar Christovia Nettles, Sr., was admissible under the co-conspirator exception to the hearsay rule and that the trial court's rulings prevented him from presenting his defense that, although he may have been guilty of participating in a conspiracy to steal money from the McDonald's restaurant, he was not guilty of kidnapping Phillips or burglarizing the restaurant.
The State asserts that this issue is procedurally barred from appellate review because defense counsel failed to make offers of proof when the trial court made its rulings excluding the testimony. We reject this argument, however, because the testimony the appellant sought to elicit and the relevance of that testimony was clearly indicated by the questions posed by the appellant's counsel to the witnesses and the context in which those questions were asked, in view of the fact that it was clear that the appellant was seeking testimony to bolster his testimony regarding the conspiracy. See Charles W. Gamble, *Page 12 Gamble's Alabama Rules of Evidence, § 103(a)(2) (1995); Charles W. Gamble,!McElroy's Alabama Evidence, § 425.01(4) (4th ed. 1991).
" 'Where proof of a conspiracy exists, any act or statement by an accused's co-conspirator in the commission of the crime, done or made before the commission of the crime, during the existence of the conspiracy and in the furtherance of a plan or design, is admissible against the accused.' " Deutcsh v. State,610 So.2d 1212, 1222 (Ala.Cr.App. 1992), quoting Charles W. Gamble, McElroy's Alabama Evidence, § 195.03(1) (4th ed. 1991).
 "[T]he principle is that by conspiring together, the conspirators have jointly assumed to themselves, as a body, the attributes of individuality, so far as necessary to pursue a common design; thus, rendering whatever is done or said in furtherance of that design a part of the res gestae and, therefore, the act of all."
Charles W. Gamble, McElroy's Alabama Evidence, § 195.03(1) (4th ed. 1991) (citing Stokley v. State, 254 Ala. 534, 49 So.2d 284
(1950)).
We note that this case was tried before the effective date of the Alabama Rules of Evidence, i.e., January 1, 1996. The new co-conspirator rule is contained in Rule 801(d)(2)(E), Ala.R.Evid., and it tracks Rule 801(d)(2)(E), Fed.R.Evid., and states: "A statement is not hearsay if — [t]he statement is offered against a party and is . . . a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." The Advisory Committee's Notes following Rule 801(d)(2), Ala.R.Evid., explain that originally statements by a co-conspirator were considered admissions of a party that were
 "classified as an exception to the hearsay rule. This exception is based upon the indicia of reliability and trustworthiness — i.e., one would normally not make a statement against interest unless it was true. In contrast, however, Rule 801(d)(2) declares such admissions to be definitionally nonhearsay. . . . Greater admissibility is based upon the concept that the adversary system, rather than any 'against interest' circumstance, satisfies the concerns underlying the hearsay rule."
See also Charles W. Gamble, Gamble's Alabama Rules of Evidence, § 801(d)(2) (1995).
In Carpenter v. State, 404 So.2d 89 (Ala.Cr.App. 1980), this Court held that pursuant to the co-conspirator exception to the hearsay rule, a co-conspirator's statement may be admitted against the State, i.e., where the statement is exculpatory, as well as against the accused, i.e., where the statement is inculpatory. Id. at 95 ("[w]e see no logical reason why the above rules [regarding the co-conspirator exception] should not have equal application to incriminating and exculpatory statements").
However, the few federal jurisdictions that have addressed this question under Fed.R.Evid. 801(d)(2)(E) have concluded that a co-conspirator's statement cannot be admitted against the government but can be admitted against the accused. SeeUnited States v. Kapp, 781 F.2d 1008 (3d Cir.), cert. denied,479 U.S. 821, 107 S.Ct. 87, 93 L.Ed.2d 40 (1986); United Statesv. Anderton, 679 F.2d 1199 (5th Cir. 1982) (co-conspirator statement offered by defendant to establish his entrapment defense inadmissible); United States v. Hackett, 638 F.2d 1179
(9th Cir. 1980), cert. denied, 450 U.S. 1001, 101 S.Ct. 1709,68 L.Ed.2d 203 (1981). We decline to follow those cases. We believe the better rule is that expressed in Carpenter, supra.
Any "disparity [in the treatment of co-conspirator statements when offered against the State and when offered against the accused] is odd if such evidence is trustworthy." Robert B. Humphreys, In Search of the Reliable Conspirator: A ProposedAmendment to Federal Rule of Evidence 801(d)(2)(E), 30 Am.Crim.L.Rev. 337, 351-52 n. 82 (1993) (discussing the "doctrinal incoherence" of the co-conspirator exemption of Fed.R.Evid. 801(d)(2)(E) and criticizing the federal courts' differing treatment of co-conspirator statements depending on whether the government or the accused is seeking to use them). In addition, a plain reading of Alabama's new co-conspirator rule shows that the co-conspirator exception allows admission of co-conspirator statements against any "party." See
Ala.R.Evid. 801(d)(2)(E). *Page 13 See also Humphreys, at 352 n. 84 (making same observation about language of federal rule while criticizing federal courts' contrary construction: "[T]he co-conspirator exception allows statements to be admitted which are made by a co-conspirator of 'a' party. In other words, the declaration of a co-conspirator of a party (the defendant) could be introduced against a party (the government)").
Moreover, to give the benefit of the co-conspirator rule only to the State while denying that benefit to the accused would violate the appellant's due process right to present a defense. In Ex parte B.B.S., 647 So.2d 709 (Ala. 1994), a sexual abuse case, the Alabama Supreme Court held that the trial court erred in excluding hearsay statements of the child-victim that the defendant sought to offer to rebut other hearsay statements of the child-victim offered by the State and admitted in evidence pursuant to § 15-25-31, Code of Alabama 1975. That statute allows hearsay statements of a child to be admitted in child sexual abuse cases where the statements concern an act that "is a material element of [the] crime." The Supreme Court reasoned:
 "Nor is the fact that the testimony did not concern 'an act that is a material element' of the crime support [for] the disallowance of the evidence. Such a construction of the Act would mean that the State could introduce inculpatory hearsay testimony, but that the defendant could not introduce exculpatory hearsay testimony. This is the principal error in the trial court's ruling. As the defense attorney said during the colloquy regarding the evidence, 'I think it violates the defendant's right to fundamental fairness and due process for him to be denied the right to rebut hearsay with hearsay.'
 ". . . To construe § 15-25-31 as precluding the defendant from offering hearsay testimony in rebuttal simply because it did not 'concern an act that is a material element' of the offense would be a serious violation of the defendant's right not to 'be deprived of life, liberty, or property, except by due process of law.' Const. 1901, Art. I, § 6. Any such construction of § 15-25-31 is expressly disapproved."
647 So.2d at 712. While we recognize that, in contrast toB.B.S., the appellant alone in this case sought to introduce statements by the co-conspirator, we hold that fairness dictates that what is generally allowable to the State also ought to be generally allowable to the accused. We would further note that the statements the appellant sought to elicit were in fact both exculpatory and inculpatory, because while they supported the appellant's defense to the kidnapping and burglary charges, they implicated him in a conspiracy to commit another crime.
We agree with the appellant that the testimony in question was admissible under the co-conspirator exception to the hearsay rule. The existence of a conspiracy was clearly proved by the direct testimony of the appellant. See Deutcsh, supra, at 1223 ("The quantum of proof required to demonstrate the existence of a conspiracy . . . is that the proof must establish a prima facie case of conspiracy"); Charles W. Gamble, McElroy's Alabama Evidence, § 195.03(2) (4th ed. 1991) ("Proof both of the accused's and another's membership in the alleged conspiracy may consist solely of accused's own admission or confession of such membership"); United States v.Pedigo, 12 F.3d 618 (7th Cir. 1993) (hearsay statements of co-conspirator established through testimony of another co-conspirator that conspiracy existed).
We cannot agree with the State's argument that the exclusion of the testimony at issue is harmless error. We acknowledge the rule that "[t]he exclusion of admissible evidence does not constitute reversible error where the evidence 'would have been merely cumulative of other evidence of the same nature, which was admitted.' " Houston v. State, 565 So.2d 277, 281
(Ala.Cr.App. 1990). Nonetheless, while the excluded testimony supported the appellant's own testimony, it was not "merely cumulative." "In Dickerson [v. Alabama, 667 F.2d 1364, 1370
(11th Cir. 1982), cert. denied, 459 U.S. 878, 103 S.Ct. 173,74 L.Ed.2d 142 (1982)], the Eleventh Circuit held that the testimony of an absent witness, a police officer, 'could not be considered cumulative of similar testimony by Dickerson's relatives and friends' because 'testimony by a police officer would have lent *Page 14 
a new aura of credibility to Dickerson's alibi defense.' "Barton v. State, 494 So.2d 943, 950 (Ala.Cr.App. 1986). Similarly, in the present case, the testimony of witnesses who would provide the only corroborating evidence supporting the appellant's testimony would have lent a new aura of credibility to the appellant's conspiracy defense. However, because of the trial court's ruling, the appellant was prevented from presenting any evidence of a conspiracy other than from his own direct testimony. The testimony the appellant sought to elicit was the appellant's strongest evidence in support of a defense that was otherwise based solely on the appellant's own claims at trial. Thus, the appellant was unable to present evidence that might tend to show that he was not guilty of kidnapping and burglary.
For the foregoing reasons, the appellant's convictions are reversed and this case is remanded to the Circuit Court of Mobile County for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
All Judges concur.