This case comes before this Court on a petition for the writ of certiorari. Ralph Lynn Key asks this Court to reverse the Court of Criminal Appeals' affirmance of his conviction on charges of manslaughter and of leaving the scene of an accident in which someone was injured, violations of § 13A-6-2(3), Ala. Code 1975, and § 32-10-1, Ala. Code 1975. Key v. State, [Ms. CR-00-0305, March 1, 2002] 890 So.2d 1043 (Ala.Crim.App. 2002). We reverse Key's manslaughter conviction, and we remand the case with instructions as to Key's conviction for leaving the scene of an accident.
On March 28, 1997, Brian Rollo was struck by an automobile and was seriously injured. On October 2, 1998, approximately 18 months after the accident, Rollo died as a result of complications from his injuries.
On November 6, 1998, the Jefferson County grand jury indicted Ralph Lynn Key for murder, § 13A-6-2(a)(1), Ala. Code 1975; reckless murder, § 13A-6-2(a)(2), Ala. Code 1975; and leaving the scene of an accident in which someone was injured, § 32-10-1, Ala. Code 1975. The State moved the trial court to abrogate the common-law year-and-a-day rule and to allow it to proceed with the murder charges against Key. The common-law year-and-a-day rule stipulates that "a defendant can be prosecuted for homicide only if the victim dies within one year and a day of the defendant's wrongful act." Woods v. *Page 1058 State, 709 So.2d 1340, 1346-47 n. 3 (Ala.Crim.App. 1997). Key moved the trial Court to dismiss the murder indictment based on the operation of that rule. On December 20, 1999, the trial court denied Key's motion and granted the State's request to proceed on the murder charge, thereby abrogating the year-and-a-day rule.
At Key's trial, the testimony of Joy Tolbert placed Key in the car that struck Rollo. Tolbert testified that she had dated both Rollo and Key. She testified that she married Key two or three days after Rollo was hit by the car, but that she later learned that her marriage to Key was void because Key had never divorced Patricia Key. Tolbert testified that on the night of March 28, 1997, she, Rollo, and Key were out together drinking, playing pool, and driving around in Key's car. Tolbert recalled that the three had had a lot to drink. Tolbert testified that she was driving, but that she had stopped the car so that Key could "get out and use the bathroom." Tolbert testified that when Key returned to the car, she and Key started fighting and Key was hitting her and grabbing her. In order to get away from Key, Tolbert got out of the car and ran down a hill. Tolbert recalled that it was very dark, that when she looked up the hill she saw someone fall and she heard tires squealing and then what sounded like thunder. Tolbert also testified that Key later told her that he had to back the car up in order to get Rollo out from under the car. Key was not present at the accident scene when the police arrived.
On cross-examination, Tolbert testified that a police investigator had interviewed her nearly a year after the incident, that the investigator had tape-recorded her statement, and that she had seen a transcript of the tape-recorded statement. Tolbert also testified that the investigator was the first person to whom she reported that Key had told her that he had to back the car up in order to get Rollo out from under it. Defense counsel then asked the court to order the State to allow defense counsel see a copy of the transcript of the interview, or, in the alternative, for the judge to review the transcript in camera. The trial court denied both requests.
Dr. Charles Wiggins had treated Rollo at a long-term care facility in Tennessee. Dr. Wiggins testified that Rollo died of complications from the injuries he had received when he was struck by the car. The State offered into evidence during Dr. Wiggins's testimony medical records from Rollo's initial treatment at an emergency room in Birmingham. Wiggins did not treat Rollo in Birmingham and did not, himself, produce any of the records from the Birmingham hospital. Key objected to the introduction of the medical records on the basis that the records were not properly authenticated, but the trial court admitted them over the defense's objection.
Ruby Hunter, Key's aunt, testified at trial that she had seen Key on the night of the accident, but that she could not remember what Key told her that night. To refresh her recollection, the State showed Hunter a transcript of her grand-jury testimony in this case. She testified at trial that reading the transcript of her grand-jury testimony did not help her memory. The State moved to have her grand-jury testimony read to the jury. Key objected, and the Court overruled his objection. Hunter had testified before the grand jury that on the night of the accident Key told her that he had run over someone and had hurt the person badly. Hunter had testified before the grand jury more than a year after Rollo was struck by the car.
Phyllis Rollan, a forensic scientist at the Alabama Department of Forensic Sciences, testified that she was unable to identify *Page 1059 
any of the samples taken from Key's car as being human blood, and that she was unable to perform any DNA analysis on any of the material taken from Key's car.
On September 7, 2000, a jury found Key guilty of manslaughter and of leaving the scene of an accident in which someone was injured, violations, respectively, of § 13A-6-2(3), Ala. Code 1975, and § 32-10-1, Ala. Code 1975. The trial court sentenced Key as an habitual offender to life imprisonment for the manslaughter conviction and to 99 years' imprisonment for the conviction for leaving the scene of an accident, the sentences to run concurrently. Key appealed, and the Court of Criminal Appeals affirmed his convictions on all charges. Key v. State, supra. Key petitioned this Court for the writ of certiorari, which we granted.
Key argues (1) that the trial court erred when it abrogated the year-and-a-day rule and that the Court of Criminal Appeals erred when it affirmed the trial court's judgment abrogating that rule; (2) that even if the Court of Criminal Appeals did not err in abrogating the year-and-a-day rule, any change in the rule may not be applied retrospectively to him; (3) that the trial court erred in not conducting an in camera inspection of the transcript of Joy Tolbert's statement to the investigator; (4) that the trial court erred in admitting into evidence Ruby Hunter's grand-jury testimony; and (5) that the trial court erred in admitting into evidence the medical records from Rollo's treatment at the emergency room on the night of the accident.
This Court reviews pure questions of law in criminal cases de novo. We review issues concerning the admission of evidence to determine whether the trial court exceeded its discretion.
 The Year-and-a-Day Rule
The State argues that the Court of Criminal Appeals correctly found that the trial court committed no reversible error when it abrogated the year-and-a-day rule, because, the State argues, the Legislature abolished the year-and-a-day rule in 1977 when it reenacted the Criminal Code without expressly providing for the rule in the new Criminal Code. The State notes that § 13A-2-5(a), Ala. Code 1975, defines what constitutes "causation" of a criminal act; §§ 13A-3-1 through 13A-3-31, Ala. Code 1975, codify defenses based on a person's responsibility for a crime; and § 13A-6-2, Ala. Code 1975, defines the offense of murder. The State argues that because none of those sections mentions the year-and-a-day rule, the rule is not a part of the Criminal Code.
Key, however, asserts that the Court of Criminal Appeals erred when it affirmed the trial court's judgment abrogating the year-and-a-day rule. He argues that because the Legislature did not expressly abolish the common-law year-and-a-day rule when it reenacted the Criminal Code in 1977, that common-law rule remains viable in Alabama law.
The main opinion in the Court of Criminal Appeals, authored by Presiding Judge McMillan, rejected the State's argument that the Legislature had abolished the year-and-a-day rule when it reenacted the Criminal Code: "The year-and-a-day rule is a part of the common law of this State. `Pursuant to the common law rule, a defendant can be prosecuted for homicide only if the victim dies within one year and a day of the defendant's wrongful act.'" Key v. State, 890 So.2d at 1046 (quoting Woods v.State, 709 So.2d 1340, 1346-47 n. 3 (Ala.Crim.App. 1997)).[1]
Section 1-3-1, Ala. Code 1975, provides: *Page 1060 
 "The common law of England, so far as it is not inconsistent with the Constitution, laws and institutions of this state, shall, together with such institutions and laws, be the rule of decisions, and shall continue in force, except as from time to time it may be altered or repealed by the Legislature."
Therefore, the year-and-a-day rule, which was a part of the common law of Alabama when the current Criminal Code was enacted in 1977, remains a part of that common law unless the Legislature has "altered or repealed" it.
By Act No. 607, Ala. Acts 1977, Act No. 770, Ala. Acts 1978, and Act No. 79-125, Ala. Acts 1979, the Legislature adopted and subsequently amended the Criminal Code. The Criminal Code is found in Title 13A of the Code of Alabama 1975. Section 13A-1-4, Ala. Code 1975, states: "No act or omission is a crime unless made so by this title or by other applicable statute or lawful ordinance." The Commentary to § 13A-1-4, Ala. Code 1975, states:
 "The original draft of this section included an explicit provision to abolish common law crimes, which is a feature of most modern criminal codes; but the Advisory Committee considered such provision impolitic and also, unnecessary under a comprehensive Criminal Code, so it was deleted. To the extent that modern crimes involve common law definitions, such definitions usually will be stated in the Criminal Code. To the extent that they require alteration, most, again, will be effected by the Criminal Code. Common law jurisdiction cannot be exercised as to purely statutory offenses, nor in cases of common law offenses for which punishment is prescribed by statute. Tucker v. State, 42 Ala.App. 477, 168 So.2d 258 (1964). Thus, § 1-3-1, which continues in force the common law `except as from time to time it may be altered or repealed by the legislature,' remains intact, although its future field of operation may be reduced."
We agree with Presiding Judge McMillan that when the Legislature reenacted the Criminal Code, it did not abolish the year-and-a-day rule. This holding is consistent with the principle that "`[s]tatutes in derogation or modification of the common law are strictly construed. . . . Such statutes are presumed not to alter the common law in any way not expressly declared.'" West Dauphin Ltd. P'ship v. Callon Offshore Prod.,Inc., 725 So.2d 944, 952 (Ala. 1998) (quoting Arnold v. State,353 So.2d 524, 526 (Ala. 1977) (emphasis omitted)). See, e.g.,Ex parte Parish, 808 So.2d 30, 33 (Ala. 2001) ("Nothing in §30-2-8.1, Ala. Code 1975, indicates the Legislature intended to abrogate the common-law rule of abatement. `If the legislature had intended to so act, that body would have made its intention evident and unmistakable.'" (quoting Holmes v. Sanders,729 So.2d 314, 316-17 (Ala. 1999))).[2] Because *Page 1061 
the Legislature has expressly adopted the common law as a "rule of decision" in Alabama, and because the Legislature did not expressly abolish the year-and-a-day rule when it reenacted the Criminal Code, we hold that the year-and-a-day rule remains part of the common law of this State.[3]
The Court of Criminal Appeals, after recognizing the existence of the common-law year-and-a-day rule, decided to judicially abolish the rule:
 "This Court is in agreement with the decisions of other jurisdictions that have judicially abrogated the year-and-a-day rule on grounds that it is an outdated relic of the common law. In deciding to abolish the common-law rule based on changed circumstances, including advancements in scientific and medical knowledge, general logic, and experience, we take note that [Key], in brief, has failed to provide this Court with any sound reasons for retaining the rule, other than it is supported by current Alabama caselaw. That argument does not provide sufficient justification for adherence to a rule that has completely outlived its intended purpose."
890 So.2d at 1050.
Judge Shaw, writing separately, agreed with the result reached in the court's main opinion:
 "[T]o the extent that I may be found in error on this observation [that the Legislature implicitly abolished the rule when it enacted a specific definition of causation in the Criminal Code], I believe that, viewed objectively, the common-law rule is at least facially inconsistent with the `laws . . . and institutions . . .' of this State and, therefore, that this Court is in no way bound to follow it as a `rule of decision' in Alabama."
890 So.2d at 1056 (Shaw, J., concurring in part an dissenting in part as to the rationale and concurring in the result).
The State urges this Court to affirm the Court of Criminal Appeals' decision judicially abolishing the rule. We decline the State's invitation, and we reverse the *Page 1062 
Court of Criminal Appeals' judgment insofar as it abrogates the year-and-a-day rule.
 "The year-and-a-day rule is deeply rooted in the common law. Its lineage is generally traced to the thirteenth century where the rule was originally utilized as a statute of limitations governing the time in which an individual might initiate a private action for murder known as `appeal of death.'"
State v. Rogers, 992 S.W.2d 393, 396 (Tenn. 1999). We acknowledge that "[t]here is support for the proposition that the rule was created by judges due to the uncertainty of medical science in determining the cause of death when death occurs so long after the injury." State v. Vance, 328 N.C. 613, 618,403 S.E.2d 495, 499 (1991). We note that other courts have found:
 "The advances of modern medical science, by extending life and by providing strong evidence of the cause of death, have undermined the wisdom of the irrebuttable presumption that the death of one who expires more than a year and a day after receiving an injury was not caused by the injury. . . . The presumption was wooden and arbitrary from the beginning, since it prevented a murder conviction even in those rare cases when causation could be proved. Now, when medical causation can be proven with much greater frequency and certainty, the old rule is simply too often demonstrably wrong to be upheld."
People v. Stevenson, 416 Mich. 383, 392, 331 N.W.2d 143, 146
(1982).
Merely abolishing the year-and-a-day rule, however, may serve only to replace one source of error with another.
 "If a murder charge can be brought two years after a blow has been struck, will there ever be a time when the Court may declare that the bridge between the blow and death has now been irreparably broken? May the Commonwealth indict a man for murder when the death occurs ten years after the blow has fallen? Twenty years? . . . I don't doubt that an expert of some kind can be found to testify that a slap in the face was the cause of a death fifteen years later.
 "If there is one thing which the criminal law must be, if it is to be recognized as just, it must be specific and definitive."
State v. Minster, 302 Md. 240, 243-44, 486 A.2d 1197, 1198-99
(1985) (quoting Commonwealth v. Ladd, 402 Pa. 164, 199-200,166 A.2d 501, 519-20 (1960) (Musmanno, J., dissenting)).
The Supreme Court of Maryland, when confronted with the question whether it should abolish the year-and-a-day rule, observed that it had five alternatives: (1) retain the rule; (2) modify the rule and follow, for example, California in applying a three-years-and-a-day rule; (3) extend the rule to any length of time it chose — 2, 5, or 10 years, or some other length of time; (4) change the rule from an irrebuttable presumption to a rebuttable presumption; or (5) simply abolish the rule.Minster, 302 Md. at 245, 486 A.2d at 1199. The Supreme Court of Maryland chose the first alternative and declined to abrogate the year-and-a-day rule because it found that
 "there is a great difference of opinion surrounding the appropriate length of the period after which prosecution is barred and some doubt whether the rule should exist at all. Consequently, we believe it is the legislature which should mandate any change in the rule. . . . The legislature may hold hearings on this matter; [it] can listen to the testimony of medical experts; and [it] may determine the viability of this rule in modern times." *Page 1063 
Minster, 302 Md. at 245-46, 486 A.2d at 1199-1200.
We agree with the Supreme Court of Maryland that this is a question most appropriately decided by the Legislature, not by the Court. See, e.g., Golden v. McCurry, 392 So.2d 815, 817
(Ala. 1981) ("After due and deliberate consideration, we hold that, even though this Court has the inherent power to change the common law rule of contributory negligence, it should, as a matter of policy, leave any change of the doctrine of contributory negligence to the legislature."). While judicial abrogation of the year-and-a-day-rule might qualify as "a routine exercise of common law decisionmaking in which the court brought the law into conformity with reason and common sense," Rogers v.Tennessee, 532 U.S. 451, 467, 121 S.Ct. 1693, 149 L.Ed.2d 697
(2001), it might also qualify as an instance in which "common-law judging became lawmaking." Rogers, 532 U.S. at 477,121 S.Ct. 1693 (Scalia, J., dissenting) (emphasis omitted).
 "There are occasions when courts must correct or ignore or supply obvious inadvertences in order to give a law the effect which was plainly intended by the legislature, but we do not subscribe to the doctrine that the judiciary can or should usurp the legislative function in a republican form of government."
Swartz v. United States Steel Corp., 293 Ala. 439, 454,304 So.2d 881, 895 (1974) (Merrill, J., dissenting).[4]
Although the year-and-a-day rule may appear archaic, the decision how best to replace the rule is a policy question best left in the capable hands of the Legislature, which has the tools and the special competency to make such prospective general rules.[5] Because we reverse the Court of Criminal Appeals' judgment insofar as it abrogates the year-and-a-day rule, and consequently reverse Key's conviction for manslaughter, we need not reach the question whether the Court of Criminal Appeals erred when it applied its new rule retroactively to Key.
 Tolbert's Statement
Key argues that the Court of Criminal Appeals erred when it affirmed the trial court's denial of his motion for an in camera inspection of Joy Tolbert's statement to the police investigator, Bill Dickinson. Tolbert testified on cross-examination that Dickinson had tape-recorded her statement and that she had seen a copy of the transcript of her tape-recorded statement. Key moved the trial court to allow him to inspect the statement, or, in the alternative, asked the trial court to conduct an in camera inspection of the statement. The State argued that Key had failed to lay a proper predicate for the inspection; the trial court then denied Key's motion.
The State had no duty to disclose Tolbert's statement to Key before trial *Page 1064 
because an inculpatory statement made by a prosecution witness is not discoverable under Rule 16, Ala. R.Crim. P. See Acklin v.State, 790 So.2d 975, 1001 (Ala.Crim.App. 2000) ("`We know of no case requiring the prosecution to provide a criminal defendant with inculpatory substantive testimony of its witnesses.'" (quoting Gowens v. State, 639 So.2d 524, 526 (Ala.Crim.App. 1993))). Once a prosecution witness has testified on direct examination, however, a defendant, upon laying a proper predicate, is entitled to inspect a prior statement of the witness for the purpose of cross-examining or impeaching the witness. Ex parte Pate, 415 So.2d 1140, 1143-44 (Ala. 1981).
The Court of Criminal Appeals found in this case that Key failed to lay a proper predicate to review Tolbert's statement because there was no evidence indicating that Tolbert had signed or otherwise authenticated her statement to the investigator; there was no evidence indicating that her statement differed from her trial testimony; and there was no evidence indicating that the failure to require the State to produce the statement caused Key's trial to be fundamentally unfair. Key v. State, 890 So.2d at 1051.
We reverse the Court of Criminal Appeals' judgment insofar as it affirmed the trial court's denial of Key's motion because the Court of Criminal Appeals misapplied the rule adopted in Pate.
In Pate we held that while the production for inspection of any statement would lie within the sound discretion of the trial judge, upon laying a proper predicate a defendant is entitled to, at least, an in camera inspection of the statement. 415 So.2d at 1144. A defendant lays a proper predicate for an in camera inspection of a witness's statement when the defendant provides evidence that the witness made a statement and that the witness has signed the statement or that the statement can otherwise be authenticated. Pate, 415 So.2d at 1142. Upon an in camera inspection the trial court could determine: (1) whether the witness's statement differed in any respect from the witness's testimony at trial, and (2) whether the statement requested was of such a nature that without it the defendant's trial would be fundamentally unfair. Pate, 415 So.2d at 1144.
In this case, Key laid the proper predicate for an in camera inspection of Tolbert's statement when he elicited testimony from Tolbert that her statement to the police investigator, Bill Dickenson, had been tape-recorded and that she had seen a copy of the transcript of that tape-recorded statement. Tolbert provided evidence of a statement and provided sufficient verification of the existence of a verbatim statement to justify an in camera inspection of the statement.
In Pate, this Court adopted for the production of out-of-court statements by a prosecution witness the test described by the Supreme Court of the United States in Palermov. United States, 360 U.S. 343, 79 S.Ct. 1217, 3 L.Ed.2d 1287
(1959). The Supreme Court explained its Palermo holding inCampbell v. United States, 365 U.S. 85, 106, 81 S.Ct. 421,5 L.Ed.2d 428 (1961):
 "In Palermo, we approved of the district judge's holding proceedings in camera to determine whether questionable documents constituted statutory `statements.' It needed no explicitness to establish that the `substantially verbatim' test was to be made by extrinsic proof, not by asking the witness himself whether the document in question substantially conformed to what he had told the federal agents."
(Citations omitted.) A federal court applying Palermo has found:
 "Even if not an exact recording, the notes would be considered a substantially *Page 1065 
verbatim recital of the witness's statement if they `could be fairly deemed to reflect fully and without distortion what had been said to the government agent' and thus be used to impeach the witness's testimony at trial."
United States v. Scotti, 47 F.3d 1237, 1249 (2d Cir. 1995). The threshold for verification sufficient to require an in camera inspection is quite low.
 "When it is doubtful whether the notes are subject to discovery, the government should submit them to the trial court for an in camera determination; the court may in its discretion consider extrinsic evidence in deciding whether the notes qualify as a witness statement."
Scotti, 47 F.3d at 1249.
We remand this case for the Court of Criminal Appeals to remand the case for the trial court to determine whether Key should have been allowed to inspect Tolbert's statement. If the trial court finds that Key should have been allowed to inspect the statement, the trial court shall order a new trial on the offense of leaving the scene of an accident.[6] *Page 1066 
 Ruby Hunter's Grand-Jury Testimony
Key argues that the Court of Criminal Appeals erred when it affirmed the trial court's admission of Ruby Hunter's grand-jury testimony. Key objected to the admission of this testimony at trial as follows: "I object. He has not laid the proper predicate for the admission of that testimony." Counsel went on to argue specific grounds for the objection, including, "There are things on the last page of [the grand-jury transcript] that are totally irrelevant and should not be admissible without. . . . That's hearsay, compounded hearsay." The State argued at trial and on appeal that Rule 803(5), Ala. R. Evid., permits a trial court to admit into evidence a "past recollection recorded." The trial court admitted Hunter's grand-jury testimony over Key's objection.
For a past recollection recorded to be admissible into evidence, the witness must testify:
 "(1) That the witness personally observed the event or facts referred to in the memorandum or record and that the memorandum or record was made or seen by the witness either contemporaneously with the event or when the witness'[s] recollection of the event was fairly fresh. . . .
 "(2) That the witness then knew the contents of the memorandum or record and knew such contents to be true and correct. . . .
 "(3) That the witness possesses insufficient recollection, other than his testimony to the matters stated in 1 and 2 above, to enable him to testify fully and accurately."
Charles Gamble, McElroy's Alabama Evidence § 116.03(2) (5th ed. 1996) (footnotes omitted).
We need not decide whether the State laid a proper predicate for the admission of Hunter's grand-jury testimony.[7] Even if the trial court exceeded its discretion when it admitted Hunter's testimony, any error was harmless because Hunter's testimony was cumulative. See Rule 45, Ala. R.App. P. Clarence Hunter, Jr., testified to the same facts as did Ruby: that Key came to his house on the night of the incident, that he got out of bed, and that Key told him that he "hurt somebody pretty bad . . . [that] he had run over somebody." Joy Tolbert testified that shortly after the accident Key told her that he had backed the car over Rollo.
Key argues that Ruby Hunter's testimony was not cumulative and that the improper admission of cumulative evidence should not always be regarded as harmless error. Key argues that Ruby was the only witness to testify that Key asked her to wash a pair of pants for him and that the jury may have inferred from this testimony that he was attempting to conceal evidence. Key fails, however, to demonstrate that the prosecution used Ruby's testimony to do anything other than to establish that Key hit someone with a car and then left the scene of the accident.[8] *Page 1067 
Key also cites Nettles v. State, 683 So.2d 9 (Ala.Crim.App. 1996), in support of the proposition that it is not always harmless error to improperly admit cumulative evidence. Nettles
does not stand for that proposition. In Nettles, the Court of Criminal Appeals held that the exclusion — not inclusion — of cumulative evidence may not always be harmless error. InNettles, Lamar Nettles, the defendant, sought to have a co-conspirator's testimony admitted under the co-conspirator exception to the hearsay rule. The Court of Criminal Appeals found that while the co-conspirator's testimony would have tended to incriminate Nettles on a conspiracy charge, it would have tended to be exculpatory as to the kidnapping and burglary charges. The Court of Criminal Appeals stated that the evidence at issue would have "provide[d] the only corroborating evidence supporting the appellant's testimony" about the conspiracy. 683 So.2d at 14. The Court of Criminal Appeals concluded, therefore, that the testimony at issue was "not `merely cumulative.'" 683 So.2d at 13.
In this case, Ruby Hunter's testimony is merely cumulative to the testimony of two other witnesses: Clarence Hunter and Joy Tolbert. We cannot conclude that Ruby Hunter's additional testimony "lent a new aura of credibility," 683 So.2d at 13, to the accounts provided by the other witnesses. Therefore, any error created by the admission of Ruby Hunter's grand-jury testimony is harmless.
 Rollo's Medical Records
Finally, Key argues that the Court of Criminal Appeals erred when it affirmed the trial court's ruling admitting into evidence Rollo's medical records during the testimony of Dr. Charles Wiggins. Key argues that the State failed to lay a proper predicate for the admission of the records, and that the records contain numerous inadmissible statements, such as, "Rollo was trapped under the car and dragged for approximately 30 feet." The State argues that the records are properly admitted under §§12-21-5 through 12-21-7, Ala. Code 1975.
 "There is a specialized business records statute in Alabama which renders admissible certified copies of hospital records that are kept in the regular course of the particular hospital's business. Copies of these hospital records, when properly certified, may be introduced into evidence without the production of the original and without the custodian of these records being present to lay a predicate."
Charles Gamble, McElroy's Alabama Evidence § 254.01(9) (5th ed. 1996) (footnotes omitted). The State also argues that at trial the prosecutor offered to allow Key to examine the records and find any portions he believed were inadmissible. Key declined the invitation. The Court of Criminal Appeals found that the trial Court did not err when it admitted the medical records. We agree, and we note that Key waived any objection to the admission of the medical records when he declined to review them for any objectionable material.
 Conclusion
We affirm the Court of Criminal Appeals' judgment insofar as it affirms the trial court's evidentiary rulings admitting Ruby Hunter's grand-jury testimony and Rollo's medical records. We reverse the Court of Criminal Appeals' judgment insofar as it abrogates the common-law year-and-a-day rule, insofar as it affirms Key's *Page 1068 
manslaughter conviction, and insofar as it upholds the trial court's order declining to review, in camera, Tolbert's statement. We remand the case for the Court of Criminal Appeals to remand the case to the trial court for that court to determine whether Key was entitled to inspect Tolbert's statement.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
MOORE, C.J., and HOUSTON, LYONS, BROWN, JOHNSTONE, HARWOOD, WOODALL and STUART, JJ., concur.
[1] The opinion in the Court of Criminal Appeals was not a majority opinion. Judge Baschab concurred with Presiding Judge McMillan. Judges Shaw, Cobb, and Wise concurred in the result, but dissented in part from Presiding Judge McMillan's rationale. Judge Shaw stated that he agreed with the State's arguments that the Legislature had abolished the year-and-a-day rule when it enacted the Criminal Code. Judge Shaw conceded, however, that "[b]ased on [his] examination of the Criminal Code, [he could] find no provision expressly altering or repealing the year-and-a-day rule. On the other hand, [he could] find no indication that the Legislature intended to retain the year-and-a-day rule as part of its definition of causation in homicide cases." Key, 890 So.2d at 1055 (Shaw, J., concurring in part and dissenting in part as to the rationale and concurring in the result).
[2] We apply a similar rule of construction in regard to statutes. See Ex parte Alabama Alcoholic Beverage Control Bd.,683 So.2d 952, 956 (Ala. 1996) ("`repeal of a statute by implication is not favored, . . . and a prior act is not repealed unless provisions of a subsequent act are directly repugnant to the former'" (quoting Merrell v. City of Huntsville,460 So.2d 1248, 1251 (Ala. 1984))).
[3] The Supreme Court of Tennessee abrogated the year-and-a-day rule in State v. Rogers, 992 S.W.2d 393 (Tenn. 1999). However,Rogers does not support the State's argument that the Legislature's failure to incorporate the year-and-a-day rule in the Criminal Code implicitly abrogates the rule. In Rogers, the State of Tennessee argued that the Legislature had abolished the year-and-a-day rule when it adopted a Criminal Sentencing Reform Act in 1989 and did not include the year-and-a-day rule in the definition of criminal homicide. 992 S.W.2d at 399. The Supreme Court of Tennessee rejected the State's argument that the year-and-a-day rule had been abolished by the Legislature when it reenacted portions of Tennessee's Criminal Code. 992 S.W.2d at 400-01. The Tennessee Supreme Court held that because statutes in derogation of the common law are to be strictly construed and because Tennessee law expressly approves of the use of common-law rules and judicial decisions, "in the absence of a statutory provision explicitly abolishing the common law rule, we are constrained to disagree with the State's assertion that the year-and-a-day rule was abolished by the 1989 Act." 992 S.W.2d at 400.
The Supreme Court of Tennessee did, however, judicially abolish the year-and-a-day rule, stating:
 "Clearly, advances in medical science, improved trial procedure, and sentencing reform have eroded the reasons originally supporting the common law year-and-a-day rule. Accordingly, we hereby abolish the common law rule, and by doing so, join the majority of other jurisdictions which have recently considered the issue."
Rogers, 992 S.W.2d at 401.
[4] Under the common law, a wife could not recover in tort for loss of consortium. In Swartz, four Justices concurred to create a common-law cause of action for a wife. Four Justices dissented from that holding. Then Chief Justice Heflin concurred in the opinion creating the cause of action, but stated specifically that his reason for doing so was that the "position is compelled by our state's constitution," and not because he believed it necessary to extend the common law. 293 Ala. at 452,304 So.2d at 893 (Heflin, C.J., concurring in the result).
[5] Indeed, "[c]ourts are not institutionally as competent as legislatures to create whole new policy regimes. If courts insist on performing that gap-filling function, they will discourage the legislature from doing so, which is not only undemocratic but is also bad policy." William N. Eskridge, Jr., The Case of theSpeluncean Explorers: Twentieth Century Statutory Interpretationin a Nutshell, 61 Geo. Wash. L.Rev. 1731, 1748 (1993).
[6] The trial court's purpose during an in camera inspection of a witness's statement is twofold: (1) to provide the defendant anything from a witness's statement that a defendant might find useful on cross-examination of the witness, and (2) to preserve the confidentiality of the information contained in a witness's statement that policy dictates should remain confidential. Ordinarily, Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194,10 L.Ed.2d 215 (1963), would require the prosecution to disclose to a defendant before trial any exculpatory material contained in a witness's statement. See Wayne R. LaFave Jerold H. Israel,Criminal Procedure § 24.3(c) (2d ed. 1992). After an in camera inspection, a trial court should also disclose to a defendant all material that, although not required to be disclosed underBrady, a defendant nevertheless might find useful for cross-examination of the witness.
There are sound policy reasons for keeping a witness's statement from a defendant before the witness testifies; for example, preserving the confidentiality of a statement may serve to protect a witness from intimidation or may allow the police to conduct a more thorough investigation without interference by the defendant. See, e.g. Palermo, 360 U.S. at 350, 79 S.Ct. 1217; Wayne R. LaFave Jerold H. Israel, Criminal Procedure § 20.3(i) (2d ed. 1992). Once a witness has testified at trial, however, the policy reasons for keeping a witness's statement from a defendant no longer exist. The defendant has already learned what the witness has to say, and presumably the State's investigation of the defendant is complete. That said, the State may nevertheless have good reasons for keeping some portions of a witness's statement from a defendant. The State certainly has a continuing interest in preserving the anonymity of confidential informants. See Roviaro v. United States, 353 U.S. 53, 59,77 S.Ct. 623, 1 L.Ed.2d 639 (1957). Also a defendant is not entitled to information about other ongoing investigations not related to his own trial. See, e.g., Stone v. Consolidated Publ'g Co.,404 So.2d 678, 681 (Ala. 1981); May v. State, 710 So.2d 1362,1368-69 (Ala.Crim.App. 1997). During an in camera inspection, a trial judge should balance the defendant's interests with the State's interests and redact those portions of a witness's statement that the judge believes should remain confidential.
Finally, although a trial court should ordinarily disclose to a defendant any potentially useful material from a statement made by a witness to the police or to any investigators, only rarely should a trial court disclose to a defendant a witness's grand-jury testimony. Section 12-16-214, Ala. Code 1975, declares the legislative determination that "it is essential to the fair and impartial administration of justice that all grand jury proceedings be secret and that the secrecy of such proceedings remain inviolate," to, among other goals, assure persons appearing before a grand jury that they may "testify freely and truthfully before an appropriate grand jury without fear or apprehension that their testimony may be subsequently disclosed. . . ." § 12-16-214(2), Ala. Code 1975.
In a case where a witness testifies to one set of facts before the grand jury, and then to an inconsistent set of facts at trial, a defendant would be entitled to review the witness's grand-jury testimony, see Ex parte Marek, 556 So.2d 375, 378
(Ala. 1989); otherwise, the Legislature's determination that grand-jury testimony is to remain secret requires that a witness's grand-jury testimony not be disclosed to a defendant.
[7] The 20-month lapse between the events at issue and Ruby Hunter's grand-jury testimony raises the question of freshness.
[8] The State argued that Key, while driving the car, hit Rollo; the State never argued that Key had blood on his pants and that he tried to conceal that evidence. The State did, however, introduce other testimony indicating that Key attempted to conceal evidence. Tolbert testified that Key tried to prevent her from testifying by marrying her. Tolbert was able to testify at Key's trial only because her marriage to Key was void because Key was married to another woman when he attempted to marry Tolbert. Tolbert also testified that on the day after the incident Key washed the car involved in the accident. Any testimony about Key's pants was likely irrelevant and certainly cumulative to Tolbert's testimony.