Jackie Lynn Morrow was convicted of manslaughter and attempted murder. He argues that the Court of Criminal Appeals erred in affirming his convictions because, he argues, the trial court erred in denying his discovery requests and refusing to conduct an in camera inspection of Regina Couch's pretrial statements and the audiotape of her emergency 911 call. We conclude that the Court of Criminal Appeals erred; therefore, we reverse the judgment of the Court of Criminal Appeals and remand for further proceedings consistent with this opinion.
 I.
Jackie Lynn Morrow and Regina Couch were married in June 1988. They divorced in June 1993. They reconciled shortly after the divorce and went into business together, opening a tanning salon. Couch and Morrow separated again in June 2000. On August 21, 2000, Raymond Bodine, Couch's boyfriend at the time, informed Morrow that Couch had changed the locks on the tanning salon.
On August 22, 2000, Morrow went to the tanning salon to get a new key. Couch was in the salon with her father, Merle. Couch and Morrow provide differing accounts of what happened next. The parties agree that Merle and Morrow started to fight, although Couch and Morrow disagree as to how the fight began. The parties agree that Couch had a gun, that she shot Morrow while he and Merle were fighting, and that Morrow and Couch then struggled for Couch's gun. The accounts differ at this point. Couch testified at trial that Morrow took the gun from her, shot Merle, and fired two shots at her. Morrow testified at trial that he tried to get the gun from Couch and that in the struggle for the gun Couch shot Merle and also fired two more shots. Couch fled and telephoned emergency 911. Morrow telephoned his mother, told her that he had been shot, and then passed out.
Merle died. Morrow was in a coma for six days and underwent several operations to repair damage caused by the gunshot. While Morrow was in a coma, the police interrogated Couch. The police tape-recorded the statement Couch made during the interrogation. Couch also reenacted the shooting for the police, and the police videotaped Couch's reenactment. Morrow awoke from his coma on August 27, 2000.
The grand jury indicted Morrow for one count of manslaughter, §13A-6-3, Ala. Code 1975, and one count of attempted *Page 541 
murder, §§ 13A-6-2 and 13A-4-2, Ala. Code 1975. Morrow filed a discovery request seeking production of "[a]ny and all reports, memoranda, notes or documents which embrace, detail, record or relate to communications with the victim(s), witnesses or other persons present at the scene of the crime." The State agreed to produce the requested material, but it ultimately breached that agreement. At trial, Couch testified against Morrow. At the conclusion of her testimony, Morrow asked the trial court to compel the State to produce copies of any statements Couch had made to the police, including copies of her audiotaped statement, the videotaped reenactment, and the recording of the emergency 911 call. The trial court declined the request. Morrow also moved the trial court to conduct an in camera inspection of the requested materials; the trial court also denied that motion.[1]
On June 27, 2002, a jury convicted Morrow of manslaughter and attempted murder. The trial court sentenced Morrow to 20 years' imprisonment on each conviction, the sentences to be served concurrently. Morrow filed a postconviction discovery request seeking the recording of the 911 call, the audiotaped statement, and the videotaped reenactment. The trial court denied the motion.[2] Morrow appealed. The Court of Criminal Appeals affirmed the conviction, without an opinion. Morrow v. State
(No. CR-01-2531, February 21, 2003), 876 So.2d 1194
(Ala.Crim.App. 2003) (table). This Court granted Morrow's petition for certiorari review. We reverse and remand.
 II.
"This Court reviews pure questions of law in criminal cases de novo. We review issues concerning the admission of evidence to determine whether the trial court exceeded its discretion." Exparte Key, 890 So.2d 1056, 1059 (Ala. 2003).
 III.
At trial, counsel and the Court had the following exchange:
 "MR. SANDLIN [Morrow's counsel]: We have got Regina [Couch] subpoenaed and I hate to call her in our case, but I'd like to be in a position to see this videotape reenactment that she gave to the police for purposes of impeaching her, if she told them something different about this thing.
 "MR. McDANIEL [Morrow's counsel]: All these statements that she gave, the recorded statements —
 "MR. JOHNSON [assistant district attorney]: Well, that's not admissible, Judge. The Court knows that.
"MR. SANDLIN: It's admissible to impeach her, Judge.
 "The COURT: It's not. It's not — only, only if there is an inconsistent statement given. There was no question about whether she had reviewed any of this in preparation of today's testimony so you could see it. The State is left under the law with the burden of actually producing it if there is anything on there that would be discoverable material — *Page 542 
 "MR. McDANIEL: There may be something in it which may be exculpatory.
"THE COURT: Well, if it's exculpatory —
 "MR. KELLETT [assistant district attorney]: They've got a burden to produce it and, of course, if they don't, they can —
 "MR. McDANIEL: We'd like to request of the court that we be allowed to look at the videotape and any recordings that she made, any statements that she gave.
 "THE COURT: Like I said, under the law it's not discoverable unless there is exculpatory information on it, and that burden is left to the State to make that determination. I will allow them to make that determination.
"MR. JOHNSON: Yes, sir.
 "THE COURT: It's a burden, a heavy burden that's on them.
"MR. JOHNSON: Yes, sir. I understand.
 "MR. SANDLIN: Well, I guess we can do this off the record. Is there anything — have y'all looked at this thing?
"MR. JOHNSON: The videotape? Well, certainly we have.
"MR. SANDLIN: Is there anything in there?
 "MR. JOHNSON: Quite frankly, it's our opinion that it's extremely consistent. And of course, you might ask well, why do you object. As the Judge said, as a matter of law, it's our position that any prior statement she gave is just not discoverable or admissible. Certainly, we've looked at it. If we hadn't looked at it, I couldn't say there was nothing in it that was exculpatory.
 "MR. SANDLIN: Well, that's why I asked the question. I don't know unless I ask."
In this exchange, Morrow's counsel did not use the phrase "in camera inspection," and any further discussion of an in camera inspection during the trial, if it occurred, is not of record. However, in its unpublished memorandum the Court of Criminal Appeals states that "Morrow also asked the trial court to conduct an in camera inspection of the videotape in order to determine whether it contained any exculpatory material." In his brief to this Court, Morrow argues that "the trial court erred when it refused to perform an in camera inspection of the audiotaped 911 call, the audiotaped interview and videotaped reenactment," and the State does not contest Morrow's implicit assertion that such a request was made. Quite the contrary, in its brief to this Court, the State declares that Morrow's counsel requested an in camera inspection, and it defines the issue presented for review as, "Was the trial court within its discretion to refuse to inspect the tapes . . . in camera, when Morrow did not lay the necessary predicate by showing that Regina Couch had authenticated the statements on the tapes . . . as her own?" The State argues that "Morrow requested that the trial court conduct an in camera inspection of the videotaped statement, but the trial court denied this request and refused to compel the State to turn over any of the recordings."
It is clear that both Morrow and the State understood that Morrow had requested that the trial court conduct an in camera review of Couch's audiotaped statement, her videotaped reenactment, and the recording of the 911 call. The State does not assert or argue to this Court that Morrow failed to request an in camera inspection. The dissent would have us affirm the judgment of the trial *Page 543 
court on a ground that was never raised and never argued, indeed, on a ground of which Morrow was never even given notice, without allowing Morrow the opportunity to argue that he did request an in camera inspection; doing so would violate Morrow's fundamental constitutional right to due process of the law.
In Ex parte Fountain, 842 So.2d 726 (Ala. 2001), the State had failed to serve the defendant with its reply brief. This Court said:
 "An appeal is a debate between the parties to the appeal. That debate is hardly fair if either party presents that party's arguments ex parte, so that the opponent cannot know what to answer, and if the appellate court considers those ex parte arguments and decides the appeal without affording the opponent a fair opportunity to respond. Rather, each party is due `information as to the claims of the opposing party, with reasonable opportunity to controvert them,' as Rule 31[, Ala. R.App. P.,] provides."
842 So.2d at 730 (citation omitted). This Court explained: "`[P]rocedural due process, protected by the Constitutions of the United States and this State, requires notice and an opportunity to be heard when one's life, liberty, or property interest are about to be affected by governmental action.'" 842 So.2d at 729
(quoting Brown's Ferry Waste Disposal Ctr., Inc. v. Trent,611 So.2d 226, 228 (Ala. 1992)). It is hardly more defensible to decide a case on an issue not contemplated or argued by either party and not before us than it would be to decide the case on a basis presented by one party without giving notice and an opportunity to be heard to the other. Either way, the prejudiced party "cannot know what to answer." For this reason, we take an appeal as we find it, with the issues framed by the parties.[3]
 IV.
Morrow argues that the Court of Criminal Appeals erred in affirming the trial court's judgment when the trial court refused to conduct an in camera inspection of Couch's pretrial statements. In the present case, Regina Couch testified against Morrow. "Once a prosecution witness has testified on direct examination, however, a defendant, upon laying a proper predicate, is entitled to inspect a prior statement of the witness for the purpose of cross-examining or impeaching the witness." Ex parte Key, 890 So.2d 1064 (citing Ex parte Pate,415 So.2d 1140, 1143-44 (Ala. 1981)). The Court of Criminal Appeals, *Page 544 
citing as authority Key v. State, 890 So.2d 1043 (Ala.Crim.App. 2002), rev'd, Ex parte Key, 890 So.2d 1056, held in its unpublished memorandum:
 "In the instant case, the videotape and audiotape were not signed or otherwise authenticated by Couch. Therefore, because he did not provide evidence that the `statements' were authenticated, Morrow did not lay the proper predicate to require the trial court to conduct an in camera inspection."
Ex parte Pate, on which we relied in our opinion in Ex parteKey, established a two-step process for determining when a trial court should conduct an in camera inspection. A defendant must first lay a predicate for an in camera inspection by providing evidence that a statement exists, then the trial court determines, during an in camera inspection, "(1) whether the witness's statement differed in any respect from the witness's testimony at trial, and (2) whether the statement requested was of such a nature that without it the defendant's trial would be fundamentally unfair." Ex parte Key, 890 So.2d at 1064 (citingEx parte Pate, 415 So.2d at 1144). In Ex parte Key we also reaffirmed that this Court in Ex parte Pate adopted the "test described by the Supreme Court of the United States in Palermov. United States, 360 U.S. 343, 79 S.Ct. 1217, 3 L.Ed.2d 1287
(1959)," 890 So.2d at 1064, and that "the threshold for verification sufficient to require an in camera inspection is quite low." 890 So.2d at 1065.
The State argues that Morrow did not lay the proper predicate and that, therefore, the trial court did not exceed its discretion in refusing to review in camera the audiotaped statement, the videotaped reenactment, and the 911 recording. However, this Court has stated that "[a] defendant lays a proper predicate for an in camera inspection of a witness's statement when the defendant provides evidence that the witness made a statement and that the witness has signed the statement or that the statement can otherwise be authenticated." Ex parte Key,890 So.2d at 1064. In the present case, the audiotaped statement, the videotaped reenactment, and the 911 recording "can otherwise be authenticated."
Couch testified that she had given an audiotaped statement to the police, that she had made a videotaped reenactment of the shooting for the police, and that she had telephoned emergency 911 to report the shooting. The district attorney had copies of the statement, the reenactment, and the 911 call. Couch and the police officers and other personnel that participated in taking the statements can authenticate them.[4] Considering that "the threshold for verification sufficient to require an in camera inspection is quite low," we conclude that Morrow laid the proper predicate for an in camera review of the materials because he presented evidence that they could be authenticated.
Couch testified that the police audiotaped her statement, that they videotaped her reenactment of the shooting, and that she telephoned emergency 911 to report the shooting. Couch testified that the beginning of her statement was not recorded;[5]
however, the fact that a portion of Couch's interview may not have been recorded *Page 545 
does not affect the admissibility of the recording. See Avery v.State, 589 So.2d 1313, 1315 (Ala.Crim.App. 1991) ("The fact that parts of the tape recording were inaudible would not affect the admissibility of the recording but the weight which the jury places on the evidence."). In Ex parte Key,890 So.2d at 1064-65, this Court quoted United States v. Scotti,47 F.3d 1237, 1249 (2d Cir. 1995), in which the United States Court of Appeals for the Second Circuit applied Palermo v. UnitedStates, 360 U.S. 343, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1959):
 "`Even if not an exact recording, the notes would be considered a substantially verbatim recital of the witness's statement if they "could be fairly deemed to reflect fully and without distortion what had been said to the government agent" and thus be used to impeach the witness's testimony at trial.'"
In Ex parte Key, this Court reversed the judgment of the Court of Criminal Appeals because we found that that court, in determining that Key had not laid the proper predicate to require an in camera inspection of a witness's statement, had misappliedEx parte Pate and Palermo. In Ex parte Key we held,
 "In this case, Key laid a proper predicate for an in camera inspection of [the witness's] statement when he elicited testimony from [the witness] that her statement to the police investigator, Bill Dickenson, had been tape-recorded and that she had seen a copy of that tape-recorded statement. [The witness] provided evidence of a statement and provided sufficient verification of the existence of a verbatim statement to justify an in camera inspection of the statement."
In the present case, Morrow has established the existence of Couch's prior statements and has "provided sufficient verification of the existence of a verbatim statement. . . ."; therefore, the trial court should have conducted an in camera review.[6] Ex parte Key, 890 So.2d at 1065.[7]
 V.
Because the Court of Criminal Appeals erred in affirming the trial court's judgment, we reverse the Court of Criminal Appeals' judgment and remand for the Court of Criminal Appeals to remand the case to the trial court for that court to conduct an in camera inspection to determine whether Morrow should have been allowed to inspect the audiotaped statement, the videotaped reenactment, and the recording of the emergency 911 call. If the trial court determines that Morrow should have been allowed to inspect those items, the trial court shall order a new trial.
REVERSED AND REMANDED.
HOUSTON, LYONS, JOHNSTONE, HARWOOD, and STUART, JJ., concur. *Page 546 
WOODALL, J., concurs in the result.
BROWN, J., dissents.
[1] In her dissent, Justice Brown argues that Morrow did not request that the trial court conduct an in camera inspection of those materials.
[2] Pursuant to Rule 32.2(5), Ala. R.Crim. P., this issue could not be raised in a Rule 32 petition: "A petitioner will not be given relief under this rule based upon any ground: . . . (5) Which could have been but was not raised on appeal, unless the ground for relief arises under Rule 32.1(b)."
[3] "`An appellate court will consider only those issues properly delineated as such and will not search out errors which have not been properly preserved or assigned. This standard has been applied to briefs containing general propositions devoid of delineation and support from authority or argument.'" K.H.M. v.D.L.I., 895 So.2d 950, 956 (Ala.Civ.App. 2003) (quoting Exparte Riley, 464 So.2d 92, 94 (Ala. 1985)).
The dissent argues:
 "The State's assertion in its brief (and Morrow's purported `implicit assertion') that Morrow's counsel requested an in camera inspection cannot alter the record. Morrow never requested an in camera inspection, and the trial court was never given the opportunity to rule on the request; thus, we cannot consider this issue on appeal."
915 So.2d at 547 (footnote omitted). The problem, however, is that whether Morrow requested an in camera inspection and whether the trial court ruled on the request are issues that have not been raised; indeed, the State takes the position that such a request was made and that the trial court denied it. The cases the dissent cites for the proposition that arguments in briefs cannot add to the record are simply inapposite to the question whether deciding a case on an issue not noticed and not addressed in the parties' briefs violates the due-process rights of the prejudiced party.
[4] Indeed, the district attorney testified that he had watched the videotaped reenactment and that Couch's testimony was "extremely consistent" with the videotape. This testimony would be sufficient to authenticate the videotaped reenactment.
[5] Couch testified that "[w]hen he [one of the police officers] started taking [the statement], it wasn't [recorded]; but then someone brought in a recorder later on. . . ."
[6] The audiotaped statement, the videotaped reenactment, and the recording of the 911 call were within the control of the State, and the State did not ask Couch to review them; therefore, it would be peculiar to hold that the absence of Couch's authentication is fatal to Morrow's attempt to lay the proper predicate to justify an in camera inspection.
[7] In Palermo v. United States, 360 U.S. 343, 79 S.Ct. 1217,3 L.Ed.2d 1287 (1959), the Supreme Court of the United States discussed the difference, recognized in 18 U.S.C. § 3500, between reliable statements, such as electronically recorded statements or written statements that have been adopted by the witness, and other less reliable statements. 360 U.S. at 349-50,79 S.Ct. 1217. The nature of electronically recorded statements eases the authentication burden on the defendant to lay a proper predicate to justify an in camera inspection.